Walnut Street Federal Savings & Loan Association, Appellant, *v.* Bernstein.

Argued November 11, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*R. Winfield Baile*, with him *William Jay Leon* and *Baile, Thompson & Shea*, for appellant.

*Arlen Specter*, with him *Barnes, Dechert, Price, Myers & Rhoads*, for appellee.

*Perrin C. Hamilton*, with him *Hamilton, Smith and Darmopray*, for appellee, Miller.

OPINION BY MR. JUSTICE BOK, January 5, 1959:

This case involves the Deficiency Judgment Act: July 16, 1941, P.L. 400; 12 P.S. §2621.1.

Between April, 1955, and April, 1957, when judgment was entered, a block of three properties passed from Bernstein to McInerney to Miller. Assessed damages were $11,400.24, total debt $14,688.95. The appellant bought the properties in for $11,800, and now avers in its petition that the fair market value was $8,000.

The court below fixed the value at $11,800 and the judgment creditor has appealed. Its position is that under Section 6 of the Act "the court shall determine and fix as the fair market value of the property the amount thereof alleged in the petition . . ." when there is an answer denying such value but no evidence to support the denial. Appellant contends that there was no competent countervening evidence and that the averment in the petition, $8000, is the fair market value.

The only question is whether or not there is proper evidence to support the court's figure.

Appellant offered two real estate appraisers and their figures were $7500 and $8000.

Appellees offered evidence of a different kind. They showed that at the execution sale an independent bid was made of $11,000. After bidding in the property for $11,800, appellant then sold it for $11,000. In 1957 the property was assessed for $20,300. Miller, one of the appellees, paid $21,000 for it less than a year before the sheriff's sale, and he valued it as of the date of the sheriff's sale at $20,000. Evidence of the deterioration of the neighborhood and of the vandalizing of the property was before the court.

Under this Act our review is limited to deciding whether or not there is sufficient evidence or a reversi-

ble error of. law: *Union National Bank of Pittsburgh v. Crump,* 349 Pa. 339 (1944). .

Courts are not restricted to receiving only expert testimony to fix value. In *Westinghouse Air Brake Co. v. Pittsburgh,* 316 Pa. 372 (1934), this Court said: "Market value or damages may be established by the owner of the property, by expert witnesses, or by persons with knowledge and experience qualifying them to form a reasonably intelligent judgment as to value."

In *Houston v. Western Washington Railroad Co.,* 204 Pa. 321 (1903), this Court said, quoting Lewis on Eminent Domain: "It is competent to prove the declarations of the owner of the property in question as to its value and the price at which he has offered to sell it, and other admissions which are pertinent to the issue."

Ordinarily, the figures of specific neighboring sales may not be given, as they would lead to collateral issues as numerous as the sales: *Serals v. West Chester. Borough School District,* 292 Pa. 134 (1928). But this is not the rule when a sale of the particular property being valued is in issue, and the owner may testify to the price he paid: *Greenfield v. Philadelphia,* 282 Pa. 344 (1925).

In the instant case we have evidence that Miller bought the property for $21,000, that appellant bought it in for $11,800 and resold it for $11,000, and that Miller thought it worth $20,000 as of the day of the execution sale.

The competence of this evidence is clear, and hence its weight was for the court below.

We will not pass upon appellant's argument that the price bid at a sheriff's sale is not competent evidence of fair market value. The point is moot because the figure of appellant's sale of the property, $11,000, evidence of which has been shown to be competent, is

the same as the amount adversarily bid. Nor will we pass upon the question, suggested by appellees, that fair market value may not be less than the amount produced at the execution sale, since this too is moot: both figures happen to be alike, $11,800.

Appellee argues that we should certify the case to the Superior Court because the difference between the figures, $11,800 minus $8,000, is less than our jurisdictional floor of $5,000 set by the Act of May 8, 1956, P.L. (1955) 1540, §3(2) ; 17 P.S. §188 (pocket), amending the Act of May 5, 1899, P.L. 248, §4; 17 P.S. §188.

This measure is not the test. The trial judge correctly certified the amount to be over $5,000, because the earlier statute refers to "the amount of the judgment, decree or award (which) shall be conclusive proof of the amount really in controversy."

In *Prentice v. Hancock*, 204 Pa. 128 (1902), when the division between the appellate courts stood at $1500, plaintiff claimed, in equity, a balance over $1500. The court below decreed a balance of $500 against her, and she argued that the difference of more than $2,000 was the amount really in controversy. This Court rejected the argument and certified the case to the Superior Court.

See also *Gerber v. Jones*, 344 Pa. 277 (1942) ; *Glaser v. Prudential Insurance Co.*, 351 Pa. 241 (1945) ; *U. S. Gypsum Co. v. Birdsboro Steel Foundry & Machine Co.*, 355 Pa. 653 (1947).

We regard the fixing of fair market value as an "award", the equivalent of an assessment of damages in a personal injury case or of an accounting balance in equity.

The decree is affirmed at appellant's costs.