THE STATE OF DELAWARE, Upon the Relation of J. Gordon Smith, et al., constituting the State Highway Department of the State of Delaware, Plaintiff, v. 0.15 Acres of Land, More or less, in New Castle Hundred, New Castle County and State of Delaware, HARVEY MINTZER, and

Harvey Mintzer trading as Toppers Drive-In Restaurant and Unknown Owners, Defendants.

(*August* 29, 1960.)

Stiftel, J., sitting.

*Daniel L. Herrmann* and *William D. Bailey, Jr.*, (of Herrmann and Duffy) for plaintiff.

*Jackson W. Raysor* for defendants.

Superior Court for New Castle County, No. 1067, Civil Action, 1958.

Stiftel, J.:

This is a condemnation case wherein the State Highway Department of the State of Delaware (State) has moved to set aside the award of a condemnation jury of commissioners on the basis that there was no competent evidence adduced by the defendants, Harvey Mintzer and Shirley Mintzer (lessees), as to value for the taking of their leasehold, Toppers Drive-in Restaurant, a luncheonette business operated by them on the southbound lane of the duPont Highway (Route 13), near the junction of the western controlled highway leading from the Delaware Memorial Bridge. The only question raised by the State relates to the competency of Harvey Mintzer, one of the owners of the lease, to testify as to the fair market value of the leasehold.

The building in which the restaurant was located contained about 525 square feet and was leased to the Mintzers by Mr. Sidney Bicow, for use as a luncheonette, at a rental of $175 a month. Although the lease did not specifically mention any land area which was to be used as access to and from the restaurant, it was nevertheless understood that the land which had been previously leased by Mr. Bicow to the Socony-Vacuum Company could be used by invitees of the luncheonette operated by the Mintzers for access to and from the restaurant and for parking space.

Upon the trial of the case, the attorney for the defendants produced one of the owners of the leasehold, Mr. Mintzer, as the only witness who testified for the defendants on the question of value. The lease provided for a rental of $175 per month. Mr. Mintzer, the operator of the leasehold, testified that, in his opinion, the leasehold had a fair market value of $275; that is, that the leasehold had a market value of $100 more than the agreed rental. Prior to stating his estimated value of the leasehold, the leasehold owner explained that he had been in related businesses for 10 years, and inferred that he had some approximate idea of two or three rental or land values on the duPont Highway. Furthermore, he testified,

without objection, as to the gross receipts of the business and its expenses during the period of its operation from June 1956 through September 1958.

The State produced two real estate experts. Mr. Robert E. Hickman, President of the Emmett S. Hickman Company, a general real estate brokerage business, testified that, in his opinion, the leasehold had a fair market value of $175 per month. Mr. Hickman did not know the rental value of comparable property on Route 13, but he arrived at a rental value as to this property by comparing it with the rental values of properties on the Kirkwood Highway, a highway many miles from Route 13. He then determined that the square footage rental of properties on Route 13 was worth twice as much as the properties on the Kirkwood Highway and consequently he arrived at the square foot value of properties on the duPont Highway. The other expert witness called by the State was a Mr. Arnold Goldsborough, a realtor, who testified that the fair rental value of the property for the unexpired term of the lease was less than the agreed rental stated in the lease, somewhere between $150 and $175 per month. He arrived at his conclusion by comparing commercial rentals at Fairfax, a community many miles from the defendants' luncheonette, with rentals on the duPont Highway, and then determining that rentals at Fairfax had a fair market value that was double the value of commercial properties on duPont Highway.

The jury was instructed that the just compensation and measure of damages to which the lessees, herein, were entitled was the fair market value of the remainder of the leasehold, as of the date of the taking, to the extent that the fair market value exceeded the rental which was reserved in the lease. Thus, if the fair market value exceeded the rental, the lessees would be entitled to recover the excess. If it did not exceed the rent reserved, the lessees would be entitled to nothing. *Annotation*, 3 *A. L. R.* 2d 286, 292. Consequently, on the testimony of the State's experts, the tenants would not

be entitled to any recoverable damages since the fair market value of their leasehold interest was the same as or less than the rent reserved in the lease at the time of the taking. Therefore, the award of $1,650 made to the defendants by the jury had to be based on the testimony of the leasehold operator, Mr. Harvey Mintzer. The maximum recovery that could have been allowed on the owner's testimony as to market value was $3,300, that is, $100 a month for 33 months, the balance remaining of the lease term. The jury awarded the defendants one-half of this amount, or $1,650.

The State Highway Department argues that the testimony of the owner of the leasehold should have been excluded because, it contends, he was able to testify for the sole reason that he was the owner of the leasehold and that he had neither the knowledge nor qualifications to express an opinion.

The doctrine that an owner of a chattel is qualified by reason of that relationship alone to give his estimate as to its value is supported by the great weight of authority. *Annotation*: 37 *A. L. R.* 2d 967 (*Opinion of owner as to value of chattel*). In *Ligon v. Brooks*, 9 *W. W. Harr.* 113, 196 *A.* 200, this Court, permitting an owner of an automobile to testify as to its fair market value, quoted with approval the rule laid down in *Chamberlayne's Modern Law of Evidence* § 2143, which was to the effect that an owner may submit his estimate of the value of personal property where it may fairly be termed of the common, usual, and ordinary kind, for the reason that his relation to his property is such that it may be fairly regarded as creating, in and of itself, possession of special knowledge with respect to its value, and that while the weight of such evidence necessarily depends upon the circumstances and is for the jury to determine, it seems that in most cases no showing of special skill is required to admit the estimate of the owner as to value. Also, in *Fidanque v. American Maracaibo Co.*, 33 *Del. Ch.* 262, 92 *A.* 2d 311, our Chancery

Court expressed its opinion that the owner of personal property is considered qualified by reason of his relationship as owner to give estimates of the value of what he owns and that the weight to be accorded such testimony is affected by his knowledge of values.

The Highway Department argues that even though the owner of an automobile in Delaware is permitted to state his estimate as to its value by reason of being the owner, that this rule should not be extended to owners of leaseholds and that owners of leaseholds should be qualified as to their knowledge of value before they should be allowed to give an opinion. The State claims that the owner of this leasehold was permitted to testify as to fair market value solely on the basis that he was its owner, and that he demonstrated no special knowledge with which to render his opinion.

In the ordinary case, the owner of a leasehold should be permitted to testify as to the value of his leasehold,[1] where a business thereon is being conducted by him. A lessee, in business, is generally cognizant of the fair market value of his leasehold and knows when it is worth more or less than the rental recited in the lease. This awareness comes

---

[1]In general, an owner of real estate or a leasehold in this country is permitted to testify as to value of his own property; the requirements pertaining to his competency or qualifications differ throughout the nation. Many jurisdictions hold bare ownership, without more, entitles the owner to testify. The weight of his testimony is left to the jury. *Kinter v. United States,* 3 *Cir.,* 156 *F.* 2d 5, 172 *A. L. R.* 232; *Salt Lake & Utah R. Co. v. Schramm,* 56 *Utah* 53, 189 *P.* 90; *Bailey v. Ford,* 151 *Md.* 664, 135 *A.* 835; *Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co. v. Messenger,* 181 *Md.* 295, 29 *A.* 2d 653; *Harold v. Pugh,* 174 *Cal. App.* 2d 603, 345 *P.* 2d 112. Other jurisdictions hold that ownership alone does not render a person competent to testify as to value unless he is familiar with the factors which give the property value. *Nichols, Eminent Domain,* Vol. 5, Sec. 18.4[2], pp. 139-40; *Village of Lapwai v. Alligier,* 69 *Idaho* 397, 207 *P.* 2d 1025; *Chicago, R. I. & G. R. Co. v. Martin, Tex. Civ. App.,* 37 *S. W.* 2d 207; *Rotge v. Murphy, Tex. Civ. App.,* 198 *S. W.* 2d 932. In these jurisdictions, ownership alone does not qualify one who has no knowledge of value and no familiarity with the location to testify as to value. 32 *C. J. S.* Evidence 545 D (3) and the owner is subject to the current rules and occupies no special position as a witness. *Sgarlat Estate v. Commonwealth,* 398 *Pa.* 406, 158 *A.* 2d 541, 545.

about from being constantly confronted with existing conditions in the area relating to businesses of a nature similar to his and which are competing with him. In fact, a lessee, actively operating his own business lease, as in the case of an owner of an automobile, generally acquires a familiarity with respect to its value. Indeed, it would be unusual for a lessee-operator of a business to be unaware of the value of his leasehold, since his relationship to his leasehold in the operation of his business may be fairly regarded as creating in and of itself a species of special knowledge regarding its value. *Cf. Ligon v. Brooks, supra*, 196 A. at page 201. Situations might arise where a lessee, either as bare owner or owner-operator, is so unfamiliar with the issue of value that the Court in its discretion may determine that he is incompetent to testify. However, as these situations arise the Court, in dealing with questions of competency, has no fixed or absolute standard, and there must always be borne in mind the distinction between the competency of a witness and the weight to be given his testimony by the fact-finders.

In this case, Mr. Mintzer did more than testify that he was the owner of the leasehold and that it had a market value of $275. He gave reasons why he thought the leasehold was worth more than the rental set forth in the lease. For instance, he testified that the lease to the luncheonette was executed on May 29, 1956, that he began the operation of his luncheonette business on June 1, 1956, and that he continued to operate this business until September, 1958, when he lost it to the State. He stated that when he rented the premises it was an empty shell and that it had no customers or potential customers. He mentioned that he made certain permanent improvements on the premises in order to more effectively carry on his business. Furthermore, without objection, Mintzer testified as to his gross receipts and expenditures for the six month period in 1956 and for the first full year of operation in 1957 and for the nine month operation in 1958. This evidence indicated that there existed a business

which returned a growing but nevertheless mild profit. Mintzer also mentioned that he had worked in related businesses for a period of 10 years and implied some familiarity with the value of the leasehold properties on which such businesses were conducted. It is true that the lessee was practically without knowledge of rental values of luncheonette properties or other similar businesses in the area, but nevertheless, his testimony did contain an inference that he had some general knowledge, even though it was not exact knowledge, of two or three rentals.

Thus, as material and illustrative of the value of the leasehold, it was proper for the lessee to testify as to the nature of the business conducted therein, that it was profitable and how much so, *Eisenring v. Kansas Turnpike Authority*, 183 *Kan.* 774, 332 *P.* 2d 539; *State Roads Commission of Maryland v. Novosel*, 203 *Md.* 619, 102 *A.* 2d 563, the agreed rental, the nature and extent of improvements made thereon by him and the other factors already mentioned, which tended to indicate a possible justifiable increase in the fair market value of the rented premises. See *Minsk v. Fulton County*, 83 *Ga. App.* 520, 64 *S. E.* 2d 336, 338.

The State places much stress on the fact that the defendants offered no testimony as to comparable rental values or sales in the vicinity. Unquestionably, such evidence is important and preferable in determining market value,[2] but it is not the only and exclusive basis for determining market value of a leasehold, and the absence of such testimony does not prevent recovery by the owner-operator of the leasehold where he has in other respects properly testified as to value.

---

[2]Comparable value testimony was ruled admissible in *Wilmington Housing Authority v. Harris,* 8 *Terry* 469, 93 *A.* 2d 518. A small minority of jurisdictions hesitate to admit this type of testimony even though fair market value is an issue. See *Walnut Street Federal Savings & Loan Ass'n v. Bernstein,* 394 *Pa.* 353, 147 *A.* 2d 359, 361, and, in general, see 118 *A. L. R.* 869; 174 *A. L. R.* 386.

██ It was correct and legally admissible for Mr. Mintzer, as the owner-operator of the leasehold to show the increase in rental value since the date of the execution of the lease and to claim compensation for the increase over the rental fixed in the lease. I, therefore, hold that the verdict of the jury is supported by substantial competent evidence and must stand.