**UNITED STATES of America**

v.

**BRANCH COAL CORPORATION, a Pennsylvania corporation.**

**Civ. A. No. 37497.**

United States District Court
E. D. Pennsylvania.
April 8, 1968.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., for plaintiff.

Alexander Osinoff, Jacob Kilimnik, Philadelphia, Pa., for defendant.

## OPINION

HIGGINBOTHAM, District Judge.

### I.

### FINDINGS OF FACT

1. Plaintiff in this action is the United States of America.

2. Defendant in this action is the Branch Coal Corporation, a Pennsylvania corporation.

3. On October 29, 1965, the United States Marshal for the Eastern District of Pennsylvania exposed at public sale the real and personal property owned by the defendant, Branch Coal Corporation, situate in Branch Township, Schuylkill County, Pennsylvania, in furtherance of the objectives and Orders of the Court. (These orders have been upheld by the Court of Appeals for the Third Circuit. United States of America v. Branch Coal Corporation, 390 F.2d 7 (3rd Cir., 1968).)

4. Plaintiff has filed a petition to fix the fair market value of the real and personal property of the Branch Coal Corporation situate in Branch Township, Schuylkill County, Pennsylvania, aforesaid.

5. At the United States Marshal's sale on October 29, the aforesaid property was sold to the Small Business Administration, an agency of the United States of America, as the highest bidder, for a price of $25,000.00, said sale being confirmed by the Court on November 10, 1965.

6. Witness, Carl G. Shilbe, called by the plaintiff, is qualified to render a competent opinion as to the value of the coal breaker—being the machinery, buildings and land whose value is here in question.

7. Witness, Joseph P. McAtee, called by the plaintiff, is qualified to render a competent opinion as to the value of the coal breaker—being the machinery, buildings and land whose value is here in question.

8. Witness, Carl G. Shilbe, has had many years experience, both prior to and subsequent to October, 1965, in the coal business in and around the area of Branch Township, Schuylkill County, Pennsylvania. He has sold coal mining and building equipment, been part owner of his own coal company and has consulted on the value of coal breakers in the past. He was familiar with the economic conditions and with the number and conditions of other coal breakers—both active and idle—in the area.

9. Witness, Joseph P. McAtee, made an extensive investigation of the value of land in the area including the price paid for varying kinds of land recently sold. He also consulted with the realtors in the area and with representatives of an engineering firm which had done a survey of all of the coal breakers in Schuylkill County. He was familiar with the economic conditions and with the conditions in the coal business in the area.

10. Witness, B. A. Moser, called by defendant, is qualified to render a competent opinion as to the value of only the machinery whose value is here in question. For many years he has been in the business of designing for construction machinery used on coal breakers and actually designed the principal machinery at the defendant's plant whose value is here in question.

11. Witness, Thomas G. Gordon, called by defendant is qualified as a real estate appraiser, he has appraised property in and around the Philadelphia area for numerous public and private agencies for over 25 years.

12. The coal breaker, whose value is here in question was inoperative in October, 1965, and had been so, without preventive maintenance for approximately two years theretofore.

13. The cessation of operation of the said coal breaker was occasioned in part by an insufficient supply of water, but primarily because of an insufficient supply of satisfactory coal.

14. The land utilized in connection with the coal breaker was scrub timber land and had been used as a dumping ground for refuse from the operations of the coal breaker. It was not suitable for either farming or mining.

15. The area in and around Branch Township, Schuylkill County, Pennsylvania, was generally depressed economically and several other breakers in the area were idle in October, 1965.

16. There is serious and substantial doubt as to whether the coal breaker, whose value is in question here, could have obtained adequate water and coal to be operated profitably and thus there is also serious and substantial doubt as to whether there was, on October 29, 1965, a market for said coal breaker.

17. The testimony of witness, B. A. Moser, is only of slight relevance since it was based solely on replacement value of the coal breaker as of 1963, at which time he appraised it, less depreciation figured solely on a straight line basis assuming continued operation and proper care and maintenance. He made no effort to describe how the replacement value less depreciation would be related to market value. Furthermore, he assumed that the supply of water and coal was sufficient to render the plant operable and therefore readily saleable. He stated that the president of the Independent Miners would see to it that a responsible operator of the Branch Coal plant would obtain an adequate supply of coal. No other evidence of this was offered.

18. The testimony of witness Thomas G. Gordon is rejected. Mr. Gordon had never appraised property in Schuylkill County before. He had not appraised a coal breaker since 1936. His investigation was limited to a personal visit to, and examination of, the premises, a conversation with the caretaker on the premises, hired by the Small Business Administration, a short conversation with Assistant Chief Assessor of Schuylkill County *not* about land values in 1965, and a conversation with three unknown men in a tavern near the premises, all in September, 1966. There was no evidence of his having knowledge of real estate values or other sales in the area. The basis for his dollar valuation of any of the items is so lacking in rational explanation as to appear arbitrary.

19. The only comparable sale of a coal breaker in the general area of the coal breaker whose value is here in question was that of the Maple Spring coal breaker. It was about 60% of the size and capacity of the Branch Coal Corporation coal breaker and in not quite as good condition. The Maple Spring coal breaker was sold with substantially more equipment than had the Branch Coal Corporation coal breaker and it had a very substantial supply of already prepared coal which was included in the sale. It was sold for approximately $60,000.

20. The testimony of witnesses Carl G. Shilbe and Joseph P. McAtee included a substantial reduction from the unit value previously, due to their conclusions that economic conditions in the area and the unavailability of coal substantial-

ly detracted from the prospects for sale of the property whose value is in question herein as an operating coal breaker.

21. The fair market value of the land and structures and personal property comprising the coal breaker of the defendant, Branch Coal Corporation, in Branch Township, Schuylkill County, Pennsylvania, was $55,000.00 as of October 29, 1965.

## II.

## DISCUSSION

On February 18, 1965, the United States petitioned the Court for the entry of default judgment against defendant, Branch Coal Corporation, in the amount of $95,785.79, covering two loans to the defendant from the Small Business Administration, an agency of the United States. Jurisdiction was based on 28 U.S.C.A. § 1345 (1948). Thereafter, by Order dated March 19, 1965, the Court ordered that the property here in question be sold at public sale by the United States Marshal. Sale was held; however, the purchaser at that sale in turn defaulted, and the property was again exposed to public sale on October 29, 1965, at which time the Small Business Administration was the successful bidder at a gross figure of $25,000.00.[1]

Apparently intending to seek to recover the balance due from the defendant on the judgment, the Government has moved for an Order fixing the "fair market value" of the property sold, pursuant to the Pennsylvania Deficiency Judgment Act, 12 P.S. § 2621.1 et seq. (1941).[2]

Both parties stipulated to the presentation of their evidence as to "fair market value" by testimony on deposition. Each party has submitted such testimony by two expert witnesses.

Defendant asserts that " * * * the *fair value* of the breaker property in question is between $120,000 and $125,-000, in excess of the judgment entered against Defendants." (Defendant's brief, page 12.) (Emphasis added.)

The Government appraises the value of the property in issue at $45,000.

Defendant concludes its brief with the above statement by speaking of "fair value", rather than the statutory test of "fair *market* value." Therein lies the nub of the problem, for defendant seeks a "just" or "fair" value without reference to the actual *market* realities in the sale or purchase of coal breakers in and around Branch Township, Schuylkill County, Pennsylvania.

█ The traditional test is the amount a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obligated to sell. Olney Federal Savings and Loan Ass'n v. Fishman, 16 Pa.D. & C.2d 273 (C.P., Phila., 1959); Bernstein Building and Loan Ass'n v. Freeman, 33 Del.Co. 257 (C.P., 1946); Donohue v. Greenspan, 33 Del.Co. 40 (C.P., 1945); Secretary of Banking v. Larsen, 32 Del.Co. 446 (C.P., 1944). Defendants' difficulty is that in this region there are few, if any, "willing buyers". And by the very nature of that paucity in demand for coal breakers, what defendant hypothesizes as a "fair value"

---

1. These procedures, pursuant to 28 U.S.C.A. §§ 2001–2007 (1948), were approved in United States of America v. Branch Coal Corp., 390 F.2d 7 (3rd Cir., 1968).

2. "Whenever any real property has heretofore or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs and the plaintiff seeks to collect the balance due on said judgment, interests and costs, the plaintiff or plaintiffs shall petition

the court having jurisdiction to fix the fair market value of the property sold as aforesaid. * * *" (12 P.S. § 2621.1 (1941).)

"After the hearing and determination by the court of the fair market value of the property sold the debtor * * * shall be released and discharged of such liability to the plaintiff to the extent of such fair market value of said property * * * less the amount of all prior * * * costs * * * and thereupon petitioner may proceed by appropriate proceedings to collect the balance of the debt." (12 P.S. § 2621.6 (1941).)

is not to be found in "fair *market* value" [3]; for with but few willing buyers there would be no reason for a buyer to bid high nor for a seller to hold out for another, higher, offer.

The leading Pennsylvania case dealing with the elements properly entering into a determination of "fair market value" is Union National Bank of Pittsburgh v. Crump, 349 Pa. 339, 37 A.2d 733 (1944). That case, cited with approval by the Court of Appeals for this Circuit in Dempsey v. Stauffer, 312 F.2d 360 (3rd Cir., 1963) held:

> " * * * 'Many elements properly enter into the determination of "fair market value". Among these are recent sales of real estate of comparable location and description * * *. Other factors of value include (1) the uses to which the property is adapted and might reasonably be applied * * *; (2) the demand for property and for similar properties, taking into consideration economic conditions which depress the market value in its true sense and detrimentally influence such demand * * *; (3) the income produced by the property, including rents, and (4) generally, all elements which affect the actual value of property and therefore influence its fair market value * * *' 349 Pa. at 343, 37 A.2d at 735." [Emphasis added.]

Defendant has cited three cases, discussed below, for his proposition that he is entitled to something other than the "fair *market* value" measured by *including* the element of demand for the particular property in question. Those cases do not support such a proposition. First and foremost, the cases cited by the defendant are concerned with condemnation proceedings by the federal government and thus are governed by the constitutional [4] test of "just compensation," rather than by the standard provided by Pennsylvania legislature. Even assuming, arguendo, that those cases and the "just compensation" clause governed this case, the result would be the same.

Defendant first cites United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L. Ed. 1392 (1949). The difference between fair market value and "just compensation" in that case was the result of an inflation in the market price directly caused by the sudden demand for ships of the kind there taken for use in the war effort *by the government* and the high probability of the government's appropriation of them. Such *artificial increments in market value caused by the government's sudden need,* would not, it was held, *have to be borne by the government* as part of its "just compensation" to the owner. 337 U.S. at 332–334, 69 S.Ct. at 1090–1091.

United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), also cited by the defendant, involved the temporary taking by eminent domain of a portion of leased premises from the long-term tenant. The issue before the court was whether the condemnee could recover, in addition to the fair rental value of the floor space taken, the added costs of relocation. Mr. Justice Roberts, for the Court, stated specifically that the decision allowing compensation above the fair rental value of the floor space as applied by the district court was not a departure from the general rule that losses to business and other consequential damages were not compensable. 323 U.S. 379–80, 382, 65 S.Ct. at 360, 361.

To the contrary, the Supreme Court held that the fair market value was the measure to be used by the District Court on remand. However, it was to

3. Findings of Fact 12–16.

4. U.S.Const. Amend. V. United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L. Ed. 1392 (1949) did involve the construction of a statute enacted by Congress using language other than "just compensation" as the measure of recovery for a "taking" by the government. However the Court concluded that, in that case the result would be the same. 337 U.S. at 331–332, 69 S.Ct. at 1090.

be determined not by the rental which the owner could be expected to get on the market in an original lease, but rather the "market rental value of such a building on a lease by the long-term tenant to the temporary occupier." 323 U.S. at 382–383, 65 S.Ct. at 361. Certainly this holding cannot be construed as a departure from the "fair market value" concept.

Finally, defendant cites United States v. 190.71 Acres of Land, etc., 300 F.2d 52 (7th Cir., 1962) in which the Court of Appeals affirmed a jury verdict as to the fair market value of the property condemned stating:

> "The record does not support the Government's contention that the court abandoned the standard of fair market value as a measure of just compensation." 300 F.2d at 55.

Neither the cases cited nor the facts of this case support the defendant's contention that this court should abandon the standard of fair market value as the appropriate measure.

■ The sole basis argued by defendants on which we should conclude that the usual elements of market value are inappropriate to measure market value here is that, the coal breaker, including all of its land, buildings and machinery would have been extremely difficult to sell to a "willing buyer". Yet clearly, this difficulty was due to the generally depressed conditions in the area, the questionable supply of coal and water necessary to the operation of a coal breaker, and the availability of several other coal breakers in the same general area. However, it is settled beyond argument that these are relevant to the very determination directed by the statute—what the property would bring in an open sale on the market. Union National Bank v. Crump, supra. To hold that the aforementioned factors, rather than being elements of fair market value, should be excluded from such a deter-mination would be contrary to the clear language and purpose of the act. See Union National Bank v. Crump, supra; Pennsylvania Company for Insurance on Lives, etc. v. Scott, 346 Pa. 13, 29 A.2d 328 (1943); Walnut Street Federal Savings and Loan Ass'n v. Bernstein, 394 Pa. 353, 147 A.2d 359 (1959); Olney Federal Savings and Loan Ass'n v. Fishman, 16 Pa., D. & C.2d 73 (C.P.Phila., 1959); Secretary of Banking v. Larsen, 32 Del.Co. 466 (1944).

Neither of the defendant's witnesses considered these problems relating to demand as diminishing the market value at all. Consequently, I can give their appraisals very little weight.

The Government's witnesses, both of whom considered these factors, differed only slightly in their estimates of the fair market value of defendant's property. This difference is evidently attributable, primarily, to the disparity in their respective evaluations of the land component. Witness, Joseph P. McAtee, appears to have made a more substantial and thorough investigation of real estate values and prices in the area than did witness, Carl G. Shilbe. Consequently, I find the testimony of Mr. McAtee to be more pursuasive and entitled to greater weight in this respect.

After consideration of all of the testimony presented and the briefs of counsel for both sides, and in view of the above findings of fact and discussion, I hereby make the following conclusions of law.[5]

### III.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and subject matter of this action. 28 U.S.C. § 1345; United States of America v. Branch Coal Corp., 390 F.2d 7 (3rd Cir., 1968).

2. The net fair market value of the land and structures and personal property comprising the coal breaker of the defendant, Branch Coal Corporation, in

---

5. This matter, having been commenced over two years ago, is stale for adjudication. This is due to the fact that great extensions of time were granted at the request of both sides for exploration of settlement. At one point I was led to believe that settlement was imminent.

Branch Township, Schuylkill County, Pennsylvania, as of October 20, 1965, was $54,461.55, being the fair market value of $55,000.00, less the Marshal's costs of $538.45.

3. That there is due and owing to the United States of America the sum of $41,324.24, being the difference between the total sum of $95,785.79 due under the judgment and the net fair market value as of October 29, 1965 of $54,461.55, together with interest from November 17, 1965 and costs of suit.