# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL CARNEY,    )
           )
  Plaintiff,     )
           )  C.A. No. N19C-06-194 ALR
  v.        )
           )
B & B SERVICE CO., MICHAEL  )
BLOOM, DAVID BLOOM, and   )
STEEL SUPPLIERS ERECTORS,  )
INC.,         )
           )
  Defendants.    )

Submitted: March 31, 2021
Decided: April 5, 2021

*Upon Defendants' Motion for Summary Judgment*
*on Tortious Interference and Punitive Damages*
**DENIED**

*Upon Defendant David Bloom's Motion for Summary Judgment*
**DENIED**

*Upon Defendants' Motion in Limine*
**DENIED**

## <u>MEMORANDUM OPINION</u>

Charles J. Brown, III, Esquire, Gellert Scali Busenkell & Brown, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Neil R. Lapinski, Esquire, Phillip A. Giordano, Esquire (argued), Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware, Attorneys for Defendants.

**Rocanelli, J.**

Plaintiff Michael Carney owns a parcel of real estate located at 501 Front Street in Wilmington, Delaware ("Carney's Property"). The owners, operators and beneficial owners of several commercial properties next to and in the vicinity of Carney's Property are the defendants in this lawsuit. Defendant B&B Service Co., a Delaware corporation, owns the property adjacent to Carney's Property ("Adjacent Property"). Defendant Steel Suppliers Erectors, Inc., a Delaware corporation, operates a business in the nearby vicinity. Defendants Michael Bloom and David Bloom are parties to this action in their individual capacities and as officers of B&B and Steel Suppliers. (The four defendants, B&B, Steel Suppliers, Michael Bloom and David Bloom are collectively referenced as "Defendants").

A rail spur crossed Carney's Property. There is a disputed factual question regarding which parties used the rail spur and a disputed legal issue regarding whether Defendants' access to the rail spur was subject to an easement. The rail spur was removed in the late 1980s or early 1990s.

The parties dispute possession and ownership of a portion of Carney's Property ("Disputed Parcel"). Carney claims that, after the rail spur was removed, he used the Disputed Parcel to store machines that were too large to fit inside his building. Defendants claim they have used the Disputed Parcel in connection with their business operations.

This dispute also involves a 75-foot chain link fence which transverses Carney's Property in such a way as to separate the Disputed Parcel from the rest of Carney's Property ("Fence"). The Fence was erected by one or more of the Defendants in or about the same location of the former rail spur. According to Carney, the Fence was erected by one or more Defendants in 2007 or 2008. Defendants contend the Fence was in place for a much longer period of time. Carney removed the Fence at approximately the same time this lawsuit was filed.

Carney contends that he negotiated with a third party in 2018 ("Prospective Buyer") to sell Carney's Property. According to Carney, Prospective Buyer eventually did not purchase Carney's Property as a result of Defendants' use of and representations regarding the Disputed Parcel. Among other things, Carney alleges that Defendant Michael Bloom told Prospective Buyer that Defendants owned the Disputed Parcel and that the Fence had been in place for 30 years.

Carney filed this lawsuit setting forth claims of tortious conduct relating to Defendants' use of the Disputed Parcel, as well as Carney's lost sale to the Prospective Buyer. In lieu of an answer, Defendants filed a motion to dismiss Carney's claim for tortious interference with business relationships (Count III). This Court denied Defendants' motion to dismiss Count III, ruling: "[a]t this stage in the

proceedings, Plaintiff has pleaded sufficient facts to support a claim for tortious interference with business relationships."[1]

Defendants now seek summary judgment on Carney's claims for tortious interference with business relationships, as well as Carney's claim for punitive damages. In addition, Defendants request a ruling that Carney may not offer testimony at trial regarding the value of Carney's Property. Finally, Defendant David Bloom seeks judgment as a matter of law and dismissal from the case on the grounds that David Bloom is not personally responsible for the actions of the defendants which are corporate entities. Carney opposes Defendants' motions. The Court heard oral argument on March 31, 2021. This is the Court's decision on the pending motions.

## DISCUSSION

### I.  Standard of Review for Summary Judgment

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[3] The moving party bears

---

[1] *Carney v. B & B Serv. Co.*, 2019 WL 5579490, at *2 (Del. Super. Oct. 29, 2019).
[2] Super. Ct. Civ. R. 56(c).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986).

3

the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[4] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[5] Summary judgment is only appropriate if Carney's claims against Defendants lack evidentiary support such that no reasonable jury could find in his favor.[6]

### A. Defendants are Not Entitled to Judgment as a Matter of Law on Carney's Claim for Tortious Interference with Prospective Business Relationships

To establish a claim for tortious interference with business relationships, the plaintiff must establish: "(1) the reasonable probability of a business opportunity; (2) the intentional interference by the defendant with that business opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of the defendant's privilege to compete or protect his business interests in a fair and lawful manner."[7]

---

[4] *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979).
[5] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[6] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012) (TABLE).
[7] *Orthopaedic Assocs. of S. Del., P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018).

To meet the reasonable probability element, "a plaintiff 'must identify a specific party who was prepared to enter into a business relationship with the plaintiff but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.'"[8] Carney has identified a potential buyer for Carney's Property, and Defendant Michael Bloom concedes that he spoke with the potential buyer regarding the Disputed Parcel. Defendants are not entitled to a ruling as a matter of law as to this element.

To meet the intentional interference element, "a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and wrongful or improper."[9] "An alleged interference in a prospective business relationship is only actionable if it is wrongful."[10] Defendants argue that Defendants' interference with Plaintiff's sale of the Property was not wrongful or improper. Specifically, Defendants argue that Michael Bloom's representations to the third party merely conveyed a truth—the existence of a dispute over the ownership of the Property—and were therefore neither wrongful nor improper.

However, Defendants are not entitled to a ruling as a matter of law on this issue. It is well-settled that "[w]hether Plaintiffs have carried their burden to

---

[8] *Id.* (brackets omitted) (quoting *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp 3d 426, 436 (D. Del. 2014)).

[9] *Id.*

[10] *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009).

establish improper interference is typically a question of fact for the jury."[11]  If Carney establishes that one or more of Defendants are responsible for Carney's lost sale of Carney's Property, then Carney may seek recovery of damages, including lost profits that he would have earned but for the wrongful interference.[12]  As discussed below, Carney will be permitted to testify as a lay person regarding the value of his property.

Where, as here, there are genuine issues as to material facts, summary judgment is inappropriate.  Defendants are not entitled to judgment as a matter of law on Carney's claim of tortious interference with business relationships.

---

[11] *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1287–88 (Del. Super. 2001).

[12] *Empire Fin. Servs., Inc. v. Bank of N.Y. (Del.)*, 900 A.2d 92, 98 (Del. 2006).  In *Empire*, the Delaware Supreme Court construed an interference with an existing contract as wrongful interference with a prospective contractual relationship and found that a plaintiff may recover for the lost profits that it would have earned, but for the defendant's wrongful interference.  *See id.*  The *Empire* Court cited to the Restatement (Second) of Torts § 766B which provides:

> One who initially and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* at 98 n.20; Restatement (Second) of Torts § 766B.

**B.** **Defendants are Not Entitled to Judgment as a Matter of Law on Carney's Claim for Punitive Damages**

Defendants contend that they are entitled to summary judgment on Carney's claim for punitive damages. The purpose of punitive damages is two-fold: (1) to punish wrongdoers and (2) to deter others from similar conduct in the future.[13] Punitive damages are recoverable "in situations where the defendant's conduct, though unintentional, has been particularly reprehensible, *i.e.* reckless, or motivated by malice or fraud,"[14] or where conduct "exhibits a wanton or willful disregard for the rights of plaintiff."[15] Conduct is willful or wanton if it reflects a "conscious indifference" or an "I don't care" attitude.[16] The question of whether conduct meets the standard for an award of punitive damages is typically a question for the jury to decide.[17]

Viewing the facts in the light most favorable to Carney,[18] the non-moving party, there are genuine issues of material fact regarding the conduct of one or more

---

[13] *Jardel Co. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).
[14] *Id.*
[15] *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983).
[16] *Id.*
[17] *Jardel Co.*, 523 A.2d at 527; *see also Brown v. United Water Del., Inc.*, 3 A.3d 272, 276 (Del. 2010) ("Ordinarily, questions of gross negligence and willful or wanton conduct are for the jury and are not susceptible of summary adjudication."); *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. 1983) ("The question of wanton conduct (as with a question of negligence) is ordinarily one for the trier of fact.").
[18] *See Brzoska*, 668 A.2d at 1364.

Defendants.  Accordingly, Defendants are not entitled to judgment as a matter of law on Carney's claim for punitive damages.

## C. Defendant David Bloom is Not Entitled to Judgment as a Matter of Law

Defendant David Bloom seeks summary judgment and dismissal from this action.  David Bloom contends that he is vice president of Steel Suppliers and that, as such, he is responsible for accounts payable and accounts receivable but that he has no responsibility for or knowledge of equipment storage on the Disputed Parcel.

The personal participation doctrine provides that "a corporate official cannot shield himself behind a corporation when he is an actual participant in the tort."[19] The "[p]ersonal participation doctrine can be triggered if an agent *actively participates, consents, or ratifies* a tortious scheme."[20]  Furthermore, "the personal participation doctrine attaches to corporate officers for torts in which they 'commit, participate in, or inspire, even though they are performed in the name of the corporation.'"[21]

There are genuine issues of materials fact in dispute regarding David Bloom's role and his knowledge.  "It is the exclusive province of the jury, as the trier of fact,

---

[19] *Aug. v. Hernandez*, 2020 WL 95658, at *3 (Del. Super. Jan. 6, 2020).
[20] *Id.* (emphasis added) (quoting *Sens Mech., Inc. v. Dewey Beach Enters., Inc.*, 2015 WL 4498900, at *3 (Del. Super. June 23, 2015)).
[21] *Id.* (quoting *Sens Mech., Inc.*, 2015 WL 4498900, at *3).

to evaluate the credibility of witnesses.  The jury is entitled to base its verdict on the testimony that it believes to be credible."[22]  Therefore, viewing the record in a light most favorable to Carney, genuine issues of material fact remain and summary judgment is inappropriate.

## II.    Carney May Testify as a Lay Witness Regarding the Value of Carney's Property

Defendants challenge Carney's proposed testimony at trial regarding the value of Carney's Property.  Since 1960 Delaware has recognized a property owner's right to give an opinion as to the value of real estate.[23]  The so-called "record owner rule" is based on the theory that landowners have special knowledge concerning the value of their own land.[24]  Generally, Delaware Rule of Evidence 701[25] governs the scope

---

[22] *Pesta v. Warren*, 2005 WL 3453825, at * 3 (Del. Dec. 14, 2005) (TABLE).

[23] *E. Shore Nat. Gas Co. v. Glasgow Shopping Ctr. Corp.*, 2007 WL 3112476, at *2 (Del. Super. Oct. 3, 2007) (citing *State ex rel. Smith v. 0.15 Acres of Land*, 164 A.2d 591, 593 (Del. 1960), *aff'd sub nom. State ex rel. Smith v. 0.15 Acres of Land, More or Less, in New Castle Hundred, New Castle Cty.*, 169 A.2d 256 (1961)).

[24] *State ex rel. Sec'y of Dep't of Transp. v. Mulholland*, 1994 WL 680002, at *2 (Del. Super. Sept. 16, 1994).

[25] Delaware Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [which governs testimony provided by expert witnesses].

D.R.E. 701.

9

of lay witness testimony. However, since the adoption of the Delaware Rules of Evidence in 1980, this Court repeatedly has upheld the record owner rule[26] which provides that a party may testify as to the estimated value of his or her own property. Accordingly, the record owner rule is well-established in Delaware jurisprudence.[27]

The limitations of a property owner's ability to testify as to the value of his or her property was directly addressed in *Eastern Shore Natural Gas Co. v. Glasgow Shopping Center Corp.*[28] as follows:

> In order to testify, the landowner must be familiar with the elements of the property. Unless the Court finds that the owner has no knowledge of the value of the property, the owner will be permitted to testify. If the owner bases the opinion on the fair market value of comparable properties, the owner must establish familiarity with the comparable properties. The owner need not possess special skills in order for the testimony to be admissible.[29]

---

[26] *See E. Shore Nat. Gas Co.*, 2007 WL 3112476, at *2 (citing *Cingular Pa., LLC v. Sussex Cnty. Bd. of Adjustment*, 2007 WL 152548, at *8 (Del. Super. Jan. 19, 2007)); *see also State ex rel. Sec'y of Dep't of Transp.*, 1994 WL 680002, at *1–2 (The owner of property "can give his opinion as to the fair market value of the property before the taking" and the owner's familiarity with the property creates "a species of special knowledge, with respect to its value.") (citing *Ligon v. Brooks*, 196 A. 200, 201 (Del. Super. 1937)); *Cronin v. Bd. of Assessment Rev. for New Castle Cnty.*, 1992 WL 52181, at *2 (Del. Super. Feb. 26, 1992) ("Delaware law permits a property owner to give his opinion as to the value of his real estate.").

[27] *E. Shore Nat. Gas Co.*, 2007 WL 3112476, at *2.

[28] *Id.*

[29] *Id.* (footnotes omitted).

The Court further clarified that the landowner's testimony "must be based on her personal knowledge of the property, not statistics or equations normally utilized by a certified appraiser."[30]

Therefore, consistent with the record owner rule, Carney may testify as to the value of Carney's Property as long as a proper foundation is laid regarding Carney's personal knowledge.

## CONCLUSION

Accordingly, for the reasons stated herein, Defendants' motion for summary judgment on Carney's claims for tortious interference with business relationships and for punitive damages must fail because there are genuine issues of material fact in dispute and Defendants are not entitled to judgment as a matter of law. In addition, based on the record before the Court and in consideration of the personal participation doctrine, Defendant David Bloom is not entitled to summary judgment. Finally, consistent with the record owner rule, Carney may testify as to the value of Carney's Property.

---

[30] *Id.*

**NOW, THEREFORE,** this 5th day of April 2021, for the reasons stated herein, (i) Defendants' Motion for Summary Judgment on Tortious Interference and Punitive Damages is hereby DENIED; (ii) Defendant David Bloom's Motion for Summary Judgment is hereby DENIED: and (iii) Defendants' Motion *in Limine* is hereby DENIED.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

**The Honorable Andrea L. Rocanelli**