JOSIAH O. WOLCOTT, Attorney General of the State of Delaware, on relation of MICHAEL W. MALONEY and EUGENE L. HUSBANDS,

*vs.*

THOMAS E. DOREMUS, President; JAMES S. GRANT, Treasurer, and WILLIAM A. JOSLYN, Secretary, and members respectively of the DUPONT TRAPSHOOTING CLUB, an unincorporated association of persons, and upwards of Three Hundred other persons, members of and as said DUPONT TRAPSHOOTING CLUB.

*New Castle, Oct.* 15, 1915.

It is the duty of the Attorney General to seek, and of the court to grant, an injunction to prevent the continuance of a public nuisance which affects or endangers the public safety.

Where the safety of the public traveling a highway is endangered by shot used in target shooting on the premises of a club abutting a highway, the public nuisance thereby created may be enjoined.

Evidence *held* to show such danger to those traveling a public highway from shot fired at targets as to constitute a public nuisance, subject to be enjoined.

Where shooting at targets is shown in an application for a preliminary writ of injunction to endanger those traveling a public highway, the shooting may be enjoined even before the hearing on the merits.

Although Act of the General Assembly approved April 14, 1891 (19 *Del. Laws, c.* 266, §1), makes it an offense to keep a gallery or other convenience for shooting at targets within three hundred yards of any highway, it does not affect the right of the public to have the nuisance incident to the shooting enjoined.

The rule that preliminary injunction will not issue in the absence of a showing that irreparable injury will result from its refusal does not apply, where injury to the public results from a continuance of the nuisance sought to be enjoined.

That a shooting club has for five years been permitted to shoot at targets and endanger the safety of those traveling a public highway and to expend large sums of money in building clubhouses, etc., does not show *laches* on the part of the public so as to bar the right to injunction to restrict the creation of further danger to the public, whose right to travel the public highways unmolested cannot be interrupted.

INFORMATION TO RESTRAIN A NUISANCE. This was an information by the Attorney General of the State, on the relation of two persons, against certain named persons as officers and members of the club and against the unnamed members of the club. An appearance was entered not only for the persons named, but also for the club as an organization, and a sworn answer was filed by the defendants. The rule for a preliminary injunction was heard on bill, answer, *ex parte* affidavits and exhibits, the answer being treated as an affidavit. The facts appear in the opinion.

*Robert Penington*, with the Attorney General, for the relators.

*William S. Hilles and J. P. Laffey*, for the defendants.

THE CHANCELLOR. An information has been filed by the Attorney General upon the relation of two citizens against the

officers of an unincorporated association of persons organized to shoot guns at targets. The organization is named duPont Trapshooting Club, and has a membership of at least four hundred persons. Some of the targets are flying targets, being clay discs flung from a mechanical device called a trap, in such a way as to imitate to a degree the flight of a bird rising from the ground. The club occupies a tract of land North of one of the suburban settlements on the western outskirts of the City of Wilmington, and near some of the mills, testing plants and other branches of the duPont Company, a manufacturer of explosives. In this neighborhood there are numerous residences to the South, chiefly occupied by laborers, while to the Northeast and West is farming land, sparsely settled. The land of the club is bounded on the East by a public road, the only public approach to the city from the North, and one much used by vehicles and pedestrians. Of the five traps, one is located one hundred and eighty-nine feet from the westerly side of the public road, and the others about seventy feet apart further to the West, the first three being on a line about perpendicular to the line of the road, and the other two being at an angle with the first three and facing towards the road. There is practically no obstruction to the flight of shot from the premises of the club onto the public road so far as appears in the evidence. At each trap are five places marked as stations, or points, from which the gunners shoot, so that there may be twenty-five persons shooting guns at the same time.

By the information, the Attorney General asks that the shooting be perpetually enjoined as a public nuisance, because it is detrimental to public health and safety, and asks also for a preliminary injunction. The grounds of complaint may be classified into (1) annoyance from the noises incident to shooting; and (2) danger to users of the highway from noises and from shot falling into it.

Many affidavits were filed on each side of the cause as to the volume, character and effect of the noises upon the health and comfort of people residing within the range thereof. Particularly obnoxious was the shooting at night. Nine sick

people and two doctors testified respecting the effect of noises on health.    There were also affidavits of several persons whose horses had been frightened to a dangerous degree by the noises while passing along the road.    A large number of persons made affidavits that they had been struck by shot in the road, and some hit so hard as to indicate that it was more than a spent shot, but one in flight.    From the premises of the club the road to the southward descends rapidly by a very steep grade to a covered bridge over the Brandywine River at the bottom of the hill.    Horses, too, were so struck and runaways resulted in some cases, and horses were made permanently. nervous, or gunshy, thereby.    One such runaway horse dashed down the steep hill in the road and another runaway was with difficulty prevented from doing so.    Indeed, shot was found in many places in the public road, and even thirty feet beyond the limit of it farthest from the club premises.    None of these facts as to shot in the road were denied by the defendants.

So far as the effect of the noises from the firing of the guns is concerned, it is not deemed by me necessary to reach a conclusion at this time, or to grant a preliminary injunction against the firing of guns on account of noises thereof.    The evidence is so conflicting as to the effect of the noises on the health of the public that I am not warranted in awarding that relief on that account.

The decision of this case at this preliminary stage is not difficult.    It is the duty of the Attorney General to seek, and of a court of equity to grant, an injunction to prevent the continuance of a public nuisance which affects or endangers the public safety, and, therefore, require immediate judicial interposition.    See the citations of the defendants' solicitors.    2 *Joyce on Injunctions*, §§1078, 1079; 2 *Beach on Injunctions*, §1079.    These support the sound and reasonable proposition urged by the defendants, which is thus stated in their brief:

" The power of a court of equity to enjoin the commission of a public nuisance at the suit of the Attorney General is limited to those of public nuisances which affect or endanger the public safety or convenience, and require immediate judicial interposition."

In effect this principle has been recognized in this State where the duty of the Attorney General to invoke by an interposition of the injunctive power of the Court of Chancery to prevent the continuance of a public nuisance to protect the public from serious injury. *Atty. Gen. v. Baynard,* 5 *Del. Ch.* 499; *Harlan, &c., Co. v. Paschall,* 5 *Del. Ch.* 435.   The former case related to a building, parts of which extended over the public street of the City of Wilmington, and alleged to be an obstruction to the free use of the highway.   The Attorney General filed an information on the relation of an adjoining owner for an abatement, and the case was heard on a rule for a preliminary injunction.   The Chancellor, while recognizing his power, refused to grant the preliminary injunction because it was not clearly shown that it was necessary to do so in order to protect the public from serious injury.   He expressly said this:

"In a clear case of substantial and material encroachment upon a public street or highway, of such a character as to seriously interfere with its use, I would consider it my duty to act without the aid of a jury; but where the encroachment, although illegal, is not of that character, the proper tribunal is a court of law, which has full power, not only to punish the offender, but to abate the nuisance. "

The other case cited related to a wharf and the bill was by an adjoining owner to enjoin the building of it into the river so as to damage the complainant.   The relief was denied because the evidence did not sustain the claim made by the bill.   But the Chancellor recognized the above principles. Indeed, they are too well established to be debated.

If therefore, it is made reasonably clear that the safety of users of the highway is imperiled by the shooting on the premises of the club at flying targets by members of the club, and other persons invited and permitted to shoot there, then a public nuisance exists, and it is clearly the duty of the court to protect the public from injury by injunction whatever other remedy there may be to enforce an abatement of the nuisance. If the menace to the public is serious, it is equally the duty of the court to grant a preliminary injunction against a continuance

of offensive conduct pending a final hearing on the full evidence adduced in the regular course of an equity cause, even though the facts are shown by *ex parte* affidavits.

Has it been shown that the safety of the public has been and will be menaced by the shooting from the traps of the club? The complainant established conclusively that prior to the discontinuance of the use of trap number one, shot did go onto and beyond the road, with very serious actual consequences to users of the highway. In answer to this the defendants assert that the shot which went into the road were from trap number one, being the one nearest the road, and that the use of this trap had been discontinued. They also produced a plot showing the location of three of the five traps, being those nearest the road, but not including the other two which face almost towards the road, and an affidavit of the president of the club, and others, that trap number one was no longer used, that it was impossible to shoot into the road from the other traps; that the affiants stood "at various points in the public road while shots were being fired from all the traps; and that no shot fell into the road." Obviously this was inconclusive, for it was not indicated at what points in the road the affiants stood, and so the distances from the traps were not shown, and it did not appear that they were in range of the shot from the guns.

But in reply, the relators filed affidavits which settle quite clearly that shot from each of the shooting points of each of the five traps can reach the public road.

Deeming it as established, so far as the testimony now before me at this time is concerned, that the shooting at flying targets at the traps of the club is a public nuisance menacing the safety of the users of the highway, who may in the future, as in the past, be struck hard by shot, and have their horses so struck and scared beyond control, and even permanently injured for road driving, I should be derelict in my duty if I did not now require a discontinuance of all shooting, by an order made even in advance of a full final hearing. It would be unwise to subject the traveling public to further peril when the danger is so clearly shown.

Whether, or not, there is sufficient evidence presented to show that the noise of the guns is of such a character as to scare normally tempered horses, and so cause injury to them, or cause them to get beyond control of the drivers, is not necessary to decide at this time, though the evidence produced for the complainant is strong on this subject too. But at this time the decision is based on the danger to users of the public road from shot reaching the road.

There is a statute in this State, passed in 1891, which provides that "no person or persons shall keep a gallery or booth or other convenience for the purpose of target shooting or other trials of skill by the use of firearms * * * within three hundred yards of any road or public passway, within the State," unless enclosed with walls of certain proportions, and imposes a penalty for a violation of the law. See 19 *Del. Laws*, *Chap.* 266, §1, and *Revised Code of* 1915.

I do not consider that this statute has a material bearing on the question if it applies, as I think it does, to a trapshooting club such as the defendant. If the club, or its officers, or members, have violated it, they are subject to indictment for a misdemeanor. But that does not protect the public from a recurrence, or effect an abatement of the public nuisance which exists if the safety of the users of a public road is imperiled. The duty to abate the nuisance still exists whoever may be convicted of a violation of the statute.

It was urged by the solicitors for the defendants that the preliminary injunction should not be awarded because there is no evidence of irreparable injury, or necessity to preserve the *status quo* until the final determination of the cause, and urge that a preliminary injunction would give in this early stage of the cause the relief which could be given by a final decree. This general principle is fundamental to the exercise of injunctive relief. But it is clearly inapplicable where a continuance of the nuisance will endanger public safety. No court could refuse to stop at once the operation of a club who shoots guns toward a public road in such away as to hit persons and horses on the public highway, whether the maintenance of such a club is directly made unlawful by statute or

not, and so much the more readily would a court so act if there was such statutory prohibition.

It is also urged by the defendants, that as the club has been shooting into the public road for five years, and thereby endangering users of the highway, and has for the purposes of sport alone expended large sums of money on the premises for clubhouse, traps and other things, that there has been *laches* which amounts to acquiescence on the part of the relators; and while lapse of time does not run against the public on an indictment for maintaining a nusiance and for the abatement of it, still the *laches* will debar relief by injunction and especially by a preliminary injunction. All of the cases cited to support the general principle as to the effect of *laches* have been examined, and while they support the proposition, in none of them were the facts at all like those in the case before me. No case has been, or I believe can be, cited, which would even justify a court in not stopping the operations of a club of persons who unlawfully maintain a shooting place within three hundred yards of a public road, and who shoot guns in such way as that shot fall into the public road, and if such cases were found they would not be followed. *Laches* has no bearing on such facts. It would be a monstrous doctrine to hold that the failure of the Attorney General, or the relators, or any other patient persons, to pursue promptly a remedy to protect users of a public road from bodily injury from users of the land adjacent to the road would deprive the court of power to grant immediate relief to the traveling public, who have a right to use unmolested and unharmed every public road of the whole State. Such is not the law.

If it were possible to do so safely, I would by the preliminary injunction only prohibit such a use of the premises of the club and its appliances as would cause shot to be thrown into the road, leaving it to the club to continue to shoot at its peril. But the public safety being so directly involved by not only the possibility, but probability, that shot would reach the road from guns fired at all of the traps, I am, with great reluctance, forced to stop all shooting at all traps until otherwise ordered. This duty is made easier by the fact that the

defendants shoot for pleasure and as a healthful form of out-door physical exercise, and not for profit.

An order will be made granting the preliminary injunction enjoining the defendants, until the further order of the Chan-cellor, from firing guns or firearms for the purpose of hitting flying targets flung by the mechanical device at any of the traps on the premises occupied and used by the defendants as a trapshooting club.

In case the club complies with the statute by enclosing its grounds with walls of the proportions required by law, and they be proper and sufficient to prevent shot reaching the public road, the defendants would, of course, be at liberty to seek a dissolution of the preliminary injunction, and in case the other questions involved are disposed of favorably to them, the operations of the club should not be longer interfered with by this court.