167 A.2d 738 (1961)
STATE of Delaware, on the relation of Januar D. BOVE, Jr., Attorney General of the State of Delaware, Plaintiff,
v.
Marie F. HILL, aka Marie Jenkins, Morris Markovitz and Rose Markovitz, Jacob Levine and Jean Levine, Thomas Pepe, Bruno T. Pepe, Anthony Pepe, Charles Whittico, Norman Jones Alexander, Nicholas Massiano, Michael Pepe, Douglas Frank Roberts, Ernest H. Roberts, Charles Walley, Joseph Chase, and Samuel Robert Roane, Defendants.
Court of Chancery of Delaware, New Castle.
January 3, 1961.
*739 Joseph J. Longobardi, Jr., Deputy Atty. Gen., for plaintiff.
John Biggs, III, and John M. Bader, Wilmington, for defendants.
SEITZ, Chancellor.
This is the decision on defendants' motion to dismiss the complaint for lack of jurisdiction or for failure to state a claim. In ruling on defendants' motion the court must take as true the material factual allegations of the complaint. I now summarize them.
The complaint is by the State of Delaware on the relation of the Attorney General against owners, lessees and possible sublessees of identified real estate situated in Wilmington, Delaware. Defendant, Thomas Pepe, has or had obtained a business license from the City of Wilmington authorizing him to operate certain properties (302 East 11th Street, 728 Wilson Street and 324 South Heald Street) as confectionary and/or grocery stores; that in fact such properties have not and had not been operated solely as confectionary or grocery stores but as a matter of public knowledge have and had been used illegally for the planning, preparation, perpetration and consummation of criminal acts. They are particularized as follows:
(a) 324 South Heald has been raided by police on numerous occasions since 1955. The raids have resulted in the arrest and/or conviction of Bruno Pepe, *740 Anthony Pepe, Charles Whittico, Norman Jones Alexander and Nicholas Massiano of the offenses of sale or disposition of lottery tickets or being concerned in interest in lottery policy writing in violation of 11 Del.C. §§ 661, 662.
(b) Allegations similar to (a) are made with respect to 302 East 11th Street except that the defendants there involved are Michael, Bruno, and Anthony Pepe and Douglas Frank Roberts and Ernest H. Roberts.
(c) Allegations similar to (a) are made with respect to 728 Wilson Street except that the defendants there involved are Charles Walley, Bruno Pepe, Joseph Chase and Samuel Robert Roane. All of the acts that occurred at 728 Wilson Street now take place with the same people involved at 313 East 8th Street.
It is alleged that the above described acts have been in open, notorious and continuous violation of the law and that all parties having any interest in the properties have had knowledge or should have had knowledge of the violations; that those listed in (a), (b), and (c) have allowed and are continuing to allow the premises to remain in operation and are continuing to frequent the premises for the purpose of violating the lottery policy laws; that those having proprietary or other interest in the properties and those concerned in the alleged illegal activities are inviting the nourishment and fruition of violations of such law by posting sentries outside the various premises for the purpose of protecting those engaged in such illegal activity.
It is further alleged that the business places listed above are being operated in a populated area and in a blatant, contemptuous and illegal manner. They are open to the public and to those who frequent or live in the surrounding neighborhoods. The operation of the stores "excites disturbance" in the surrounding neighborhoods by reason of the method of the operation of such stores and by reason of the continuous visits of police officers making continual arrests. By reason of the activities herein described, there has been and will continue to be irreparable damage to the character of the neighborhoods with a resultant decrease in their monetary value and resultant irreparable injury to properties in the surrounding neighborhoods. Public sentiment is scandalized by such notorious violations of the law which outrage decency, are injurious to the public morals and general welfare and constitute a public nuisance.
Plaintiff seeks in substance an order enjoining any of the defendants from leasing or subleasing any of the identified properties for illegal purposes. It also seeks to enjoin those allegedly involved in the unlawful action from using such properties for illegal purposes, more particularly, for use in violation of specified statutes.
Defendants first argue that this court lacks jurisdiction over the subject matter of this complaint.
As I read the complaint, this is an action by the State on the relation of the Attorney General primarily to abate a public nuisance. It is too clear for comment that this court has jurisdiction over such an action. See Wolcott v. Doremus, 11 Del. Ch. 58, 95 A. 904; Wolcott v. Doremus, 11 Del.Ch. 277, 101 A. 868.
Defendants appear to argue that this court lacks jurisdiction because the complaint alleges violations of criminal statutes. Plaintiff relies primarily on the contention that it has alleged a public nuisance of the type which equity will abate. I doubt that the facts alleged and relied upon by plaintiff to support this theory are themselves violations of the criminal law. Thus, plaintiff is relying upon the commotion in the neighborhoods, decrease in land values, etc. These are the consequences of the criminal violations. In any event, I think the cases of Wolcott v. Doremus, above, dispose of this point. They hold that if the acts complained of constitute a *741 public nuisance under equitable standards, this court is not ousted of jurisdiction merely because such acts are also in violation of a criminal statute.
Since plaintiff purports to allege an action to restrain a public nuisance, it follows that this court has jurisdiction and the first ground of defendants' motion must fail. I need not decide plaintiff's alternative argument that repeated violations of criminal statutes are themselves sufficient to create a public nuisance cognizable in equity. Clearly, in Wilmington, the criminal acts here alleged are made nuisances in the criminal sense. Section 2319 of the Penal Code, City of Wilmington (1942) so declares. Nor need I consider the significance of the failure of the Attorney General to obtain legislative approval of certain bills dealing with this subject.
The court is next confronted with defendants' contention that the complaint fails to state a claim. Defendants appear to argue first that the allegations of the complaint do not show a public nuisance of the type which equity will abate. I approach this issue mindful of the fact that the claim should not be dismissed unless it appears to a certainty that under no state of facts which could be proved to support the claim asserted would the plaintiff be entitled to relief.
It is of preliminary importance to consider definitions of public nuisances. Most are so broad as to be of limited value. Thus, in Murden v. Commissioners of Town of Lewis, Inc., 6 Boyce 48, 96 A. 506, 507, a public nuisance is defined as anything which "essentially interferes with the enjoyment of life on property and a nuisance is public when it affects the rights to which every citizen is entitled". More explicitly, it is activity which produces some tangible injury to neighboring property or persons coming into contact with it and which a court considers to be objectionable under the circumstances.
At this stage, the court can only look to the allegations of the complaint to see whether the plaintiff might be able to prove a public nuisance. Those allegations show that the properties which are used by certain defendants are being constantly raided and arrests made with consequent disturbance in the various neighborhoods. The use made of such premises and the techniques used to protect them from police interference are matters of common public knowledge in the neighborhoods. They are also frequented by some members of the surrounding neighborhoods. The cumulative effect of the foregoing allegations is to charge that defendants' actions damage the character of the neighborhoods, decrease the monetary values of the properties and adversely affect the morals of those exposed to such recurring and flagrant violations of law.
Can it be said that these summarized allegations are sufficient, if proved, to justify a finding of an existence of a public nuisance? I think so. I say this because such proof might reasonably justify the inference that defendants are prejudicing property values, causing disturbances in the various areas on a continuing basis and lowering respect for law and order. Although it was a criminal case, the decision in State v. Layman, 5 Harr. 510, demonstrates the pertinency of the matters alleged to the issue of "public nuisance".
As the court said in Wolcott v. Doremus, 11 Del.Ch. 277, 101 A. 868, 869, "Each case presented to the court must be tested by its own circumstances". I construe this to mean that the proof will be decisive rather than the wording of the allegations.
Defendants next contend that the complaint must be dismissed because the Attorney General has failed to join the real parties in interest as plaintiffs. Presumably defendants would require the Attorney General to join as plaintiffs the persons who either reside or own property in the particular neighborhoods.
The Attorney General is representing the State and the State has an independent *742 standing to seek to enjoin the continuance of a public nuisance. See Moss v. Kuhwald, Del., 151 A.2d 516. Its status is not dependent upon its ability to obtain the cooperation of one or more members of the affected public. See Joyce On The Law of Nuisance, § 437; People v. Truckee Lumber Co., 116 Cal. 397, 48 P. 374, 39 L.R.A. 581.
I conclude that the plaintiff's complaint sufficiently alleges a public nuisance of the type which this court has the power to enjoin. Whether the proof at trial will be sufficient is a matter for another day. It follows that defendants' motion to dismiss on the ground that the complaint fails to state a claim must also be denied.
Present order on notice.