# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARGARET DAYTON and, ) 
EVERETT JONES, )
 )
Plaintiffs, )
 )
v. ) C.A. No. N17C-08-100 CLS
 )
WILLIAM COLLISON, )
 )
Defendant. )

Date Submitted: July 26, 2019
Date Decided: September 24, 2019

*Upon Defendant William Collison's*
*Motion for Summary Judgment*
**Granted in Part.**

*Upon Defendant William Collison's*
*Motion in Limine to Limit Plaintiff's Testimony*
**Granted in Part.**

Teresa J. Tabah, Esquire, Law Office of Teresa J. Tabah, Newark, Delaware, Attorney for Plaintiffs.

Donald L. Gouge, Jr., Esquire, Donald L. Gouge, Jr., LLC, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J.**

1

Before the Court is Defendant William Collison's Motion for Summary Judgment on Plaintiffs Margaret Dayton and Everett Jones's claims of Continuing Nuisance, Destruction of Property, Trespass, and Slander. Also before the Court is Defendant William Collison's Motion in Limine to Limit Plaintiff's Testimony. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and Defendant's Motion in Limine is **GRANTED IN PART.**

## Background

This action involves a dispute between two neighbors. Plaintiffs own and reside in real property located at 18 Squirrel Lane, Newark, DE 19711. Defendant owns and resides in real property located at 19 Squirrel Lane, Newark, DE 19711. The parties' properties are adjacent.

According to the Amended Complaint, since 2014, Defendant has: (1) removed a significant number of standing trees and approximately 5,000 square feet of naturally growing plants from within the City of Newark's natural buffer zone ("Buffer Zone"); (2) removed a 30-year-old drainage pipe located on his property and filled the remaining pipe with rocks and debris; (3) intentionally altered the natural grade of his property so as to interfere with the natural flow of water; and (4) trimmed a maple tree located on Plaintiffs' property along the boundary line. Additionally, Plaintiffs claim that an underground storage tank ("UST") on

2

Defendant's property is not permitted as required by the Municipal Code of the City of Newark ("the Code").

Count I and II for Continuing Nuisance and Destruction of Property allege that Plaintiffs have suffered extreme mental anguish and damages of at least a $50,000 loss in the value of their home as a result of: the flooding caused by the various interruptions to the natural drainage of their property; the invasion of privacy due to the removal of the Buffer Zone; residing adjacent to a hazardous condition due to the presence of Defendant's UST; damage or potential damage to the structural integrity of their property's foundation; and the likely increased cost of homeowners insurance. Plaintiffs seek general and specific damages.

Count III for Trespassing alleges that Defendant and/or his agents have trespassed onto Plaintiffs' property multiple times to alter the natural drainage flow of water, construct a berm, cut Plaintiffs' trees, and take pictures or otherwise spy on Plaintiffs. From this, Plaintiffs claim they have suffered and continue to suffer damages and mental anguish in a sum to be determined at trial.

Count IV for Slander was voluntarily withdrawn at oral argument held on this motion on June 19, 2019.

### Parties' Assertions

Defendant argues that any "hazard" to Plaintiffs' property caused by the removal of a "significant" number of trees on the City's property is insufficiently

3

pleaded and is not supported by an expert. The assertion that 5,000 square feet were bush hogged likewise fails to include any evidence or expert support. Most importantly, Defendant asserts that Plaintiffs do not have standing to bring such claims because the area where the tree removal occurred is owned by the City.

Defendant further argues that Plaintiffs have neither provided evidence that a drainage pipe was on Plaintiffs' property or that it had been in place for 30 years, nor any expert evidence to support claims that their flood insurance rate will increase. Defendant also argues that any allegations of him conducting or maintaining an ultra-hazardous activity are based on the presence of an UST, which is located on the side Defendant's property that does not abut Plaintiffs' property and was permitted and approved by the City in January 2018.

Defendant contends there is no proof of actual damage to Plaintiffs' property from the alleged flooding, invasion of privacy, creation of a hazardous condition, and damage to the foundation of the home. The alleged $50,000 loss in property value has not been supported by an expert witness or any documentation. With regard to the Trespass claim, Defendant argues that there is no proof that Defendant entered upon Plaintiffs' property and altered anything.

Plaintiffs argue that they have standing to bring the claims set forth in the Amended Complaint because they seek to recover for actual damage done to their property. Plaintiffs contend that they are alleging nuisance *per se* as a result of being

4

forced to reside adjacent to an unpermitted 500-gallon UST, public nuisance as a result of the continued destruction of the FEMA Floodplain, and private nuisance for the loss of privacy from the removal of trees in the Buffer Zone. Regarding the claim for Trespass, Plaintiffs argue that they were damaged by Defendant's presence on their property to cut their trees. Finally, regarding the claim for Destruction of Property, Plaintiffs argue that they have suffered damages because Defendant altered the flow of water so that it remains on Plaintiffs' property and argue that they do not need expert testimony to support these assertions.

## Standard of Review

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[1] The moving party bears the initial burden of showing that no material issues of fact are present.[2] Once such a showing is made, the burden shifts to the non-moving party to demonstrate that there are material issues of fact in dispute.[3] In considering a motion for summary judgment, the Court must view the record in a light most favorable to the non-

[1] Super. Ct. Civ. R. 56(c); *Buckhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[2] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[3] *Id.* at 681.

5

moving party.[4] The Court will not grant summary judgment if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law.[5]

## Discussion

### A. Defendant's Motion for Summary Judgment

The Court will grant a motion for summary judgment, if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Plaintiffs have made a litany of allegations and have lodged four formal legal claims against Defendant. Defendant has moved for summary judgment on all four of Plaintiffs' legal claims. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED with regard to Plaintiffs' Continuing Nuisance and Slander claims and DENIED with regard to Plaintiffs' Destruction of Property and Trespass claims.

#### 1. Count I: Continuing Nuisance

Plaintiffs allege that Defendant's conduct constitutes a Continuing Nuisance.[6] There are two types of nuisance claims: public and private. Plaintiffs allege both public and private nuisance.

---

[4] *Buckhart*, 602 A.2d at 59.
[5] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *Phillip-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Apr. 26, 2006).
[6] Am. Compl. ¶¶ 8–15.

6

### a. Public Nuisance

A public nuisance is one which affects the rights to which every citizen is entitled.[7] The activity complained of must produce a tangible injury to neighboring property or persons and must be one which the court considers objectionable under the circumstances.[8] Both parties agree that Plaintiffs must show standing for their public nuisance claim.[9]

To have standing to sue on a public nuisance claim, an individual must (1) be capable of recovering damages and (2) have standing to sue as a representative of the public,[10] "as in a citizen's action or class action."[11] Plaintiffs have no right to bring a claim against Defendant for alleged violations of the Code and thus, no standing to sue as a representative of the public.

Plaintiffs allege Defendant's numerous violations of the Code constituted a continuing nuisance on Plaintiffs' property.[12] For the reasons that follow, the Court

---

[7] *Alexander v. Evraz Claymont Steel Holdings Inc.*, 2013 WL 8169799, at *2 (Del. Super. Mar. 31, 2013) (quoting Restatement (Second) of Torts § 821B(1) (Am. Law Inst. 1979)).

[8] *Patton v. Simone*, 1992 WL 398478, at *9 (Del. Super. Dec. 14, 1992) (quoting *State v. Hill*, 167 A.2d 738, 741 (Del. Ch. 1961)).

[9] *Patton v. Simone*, 1993 WL 144361, at *1 (Del. Super. Mar. 9, 1993); Def.'s Mot. for Summ. J. ¶ 5; Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 1, at 1 n.2.

[10] *Patton*, 1993 WL 144361, at *1 (quoting *Artesian Water Co. v. Gov't of New Castle Cty.*, 1983 WL 17986, at *22 (Del. Ch. Aug. 4, 1983)).

[11] *Patton v. Simone*, 1993 WL 54462, at *13 (Del. Super. Jan. 28, 1993) (quoting *Artesian Water Co.*, 1983 WL 17986, at *22).

[12] Am. Compl. ¶ 9.

7

concludes that the Code creates no rights enforceable by members of the public, and thus, it presents no basis upon which the requested relief may be granted. Because Plaintiffs have no right to request relief based on alleged violations of these ordinances, Plaintiffs also do not have standing to sue as representatives of the public.

Chapter 14A of the Code—dealing with Floodplains—authorizes a designated agent of the City, the floodplain administrator, to enforce the regulations of Chapter 14A.[13] The Code does not explicitly create a private right of action at law.[14] Thus, the Court must determine whether the Code provides an implied private right of action against a private party.

To determine whether an implied private right of action exists, Delaware courts use the following three-prong test:

(1) Is plaintiff a member of a class for whose special benefit the statute was enacted;

(2) Is there any indication of legislative intent to create or deny a private remedy for violation of the act; and

---

[13] NEWARK, DE, CODE OF ORDINANCES §§ 14A-10, 14A-11(l) (2019).
[14] *Id.* § 14A-35 ("Any person . . . who shall violate any provision of this chapter shall be guilty of a misdemeanor . . . . The application of a penalty hereunder shall not preclude an application to a court for appropriate injunctive relief.").

(3) If there is no such indication, would the recognition of an implied right of action advance the purposes of the act?[15]

The second prong of this test, concerning statutory intent, is determinative.[16]

According to the Charter of the Code, the City has "all the powers granted to municipal corporations and to cities by the Constitution and general laws of the State of Delaware, together with all the implied powers necessary to carry into execution all the powers granted."[17] The "city manager" is responsible for the administration of all city affairs authorized by or under the Charter and may appoint individuals to enforce select ordinances of the Code.[18] Those individuals—"code enforcement constables"—must enforce such ordinances by issuing written citations for code violations. A citation for a code violation requires the violator to appear in Alderman's Court unless the code enforcement constable deems it appropriate for the violator to pay the fine prescribed for the violation in lieu of a court appearance.[19] The Charter to the Code further provides that the Alderman's Court has jurisdiction

---

[15] *Couch v. Delmarva Power & Light Co.*, 593 A.2d 554, 558–59 (Del. Ch. 1991); *Lock v. Schreppler*, 426 A.2d 856, 864 (Del. Super. 1981). This three-prong test originated from the U.S. Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66, 78 (1975), and was later adopted by Delaware courts.

[16] *Rays Plumbing & Heating Serv., Inc. v. Stover Homes, LLC*, 2011 WL 3329384, at *2 (Del. Super. July 26, 2011) ("This Court . . . finds that statutory intent is determinative in a private right of action analysis.").

[17] NEWARK, DE CHARTER OF THE CITY § 201 (2019).

[18] NEWARK, DE, CODE OF ORDINANCES §§ 2-21, 2-22, 2-22.2.

[19] *Id.* § 2-22.2(b)(1)–(3).

9

"over all breaches of the peace, offenses and violations of any civil or criminal ordinance of the City" committed within the corporate limits of Newark.[20] Finally, the Alderman's Court has the power to "hold for bail, fine, or imprison" individuals who violate the Code.[21] Based on all of aforementioned provisions in the Code, the Court finds that the City of Newark intended for the City to be solely responsible for enforcing its ordinances; accordingly, the City did not intend to create a private right of action based upon ordinance violations.[22]

Plaintiffs argue that the continued destruction of the FEMA floodplain constitutes a public nuisance.[23] Plaintiffs allege that Defendant is destroying the floodplain by: removing standing trees from the floodplain area; relocating several felled trees from the floodplain area; and clearing the floodplain area of naturally growing plants.[24] All three of Defendant's alleged actions violate Section 2-71 of

---

[20] NEWARK, DE CHARTER OF THE CITY § 602.12.

[21] NEWARK, DE, CODE OF ORDINANCES § 2-35-1(a).

[22] Cf. Walker v. Williams, 2016 WL 6555886, at *3 (Del. Ch. Nov. 4, 2016) (finding there is no statutory standing for citizens to enforce the Building Code of Sussex County because the regulations are silent as to a private right of action). The Court of Chancery also noted that a finding that all property owners had standing to enforce the Building Code would "result in inefficient and pernicious litigation." Id. at *4. The Court expresses a similar sentiment with regard to the instant case.

[23] Pl.'s Resp. to Def.'s Mot. for Summ. J. 1 n.2.

[24] Am. Compl. ¶¶ 5(B)–(C), 6(H), 9–10.

10

the Code.[25] It is a misdemeanor offense to violate this ordinance.[26] The floodplain area is located on the property of the City of Newark; thus, the City has the sole authority over these violations. Plaintiffs do not have standing to bring a public nuisance claim for these alleged actions of Defendant.

Plaintiffs further argue that the Defendant's failure to cease and desist all unpermitted activities which require a permit constitutes a public nuisance. Plaintiffs allege that Defendant: placed an underground storage tank (UST) on his property without a permit, and installed "certain heating systems" without a permit.[27] Each of Defendant's alleged actions violate Section 14A-12 of the Code.[28] It is a

---

[25] NEWARK, DE, CODE OF ORDINANCES § 2-71(a). The Code states:
> In any park owned or operated by the City of Newark, no person shall *cut, break, move*, take or otherwise injure, destroy, or deface any *trees, shrubs, plants*, turf, rock, or any building, fence, bridge, sign, or other structure, nor foul any spring or stream, nor shall any person *dump* any earth, rubbish, or *other substance or material in or upon* any park without written permission of the department of parks and recreation.

*Id.* (emphasis added). Chapter 27, Appendix III, Section II of the Code further prohibits dumping or filling on the floodplain area. *Id.* § 27-III-II(d)(2). It is also a misdemeanor to violate this ordinance. *Id.* § 27-17.

[26] *Id.* § 2-72.

[27] Am. Compl. ¶¶ 5(C), 9–10.

[28] NEWARK, DE, CODE OF ORDINANCES § 14A-12. The Code states:
> It shall be *unlawful* for any person or entity to begin construction or other development which is wholly within, *partially within, or in contact with any identified special flood hazard area*, as established in section 14A-4, including but not limited to: subdivision of land, filling, grading, or other site improvements and *utility installations*; placement or replacement of a manufactured home; recreational vehicles; *installation or replacement of storage tanks*; or alteration of any watercourse, *until a permit is obtained from the city*.

11

misdemeanor offense to violate this ordinance.[29] Based on the evidence before the Court, Defendant's property falls within the purview of these Code provisions;[30] thus, the City of Newark has the sole authority over these violations. Plaintiffs do not have standing to bring a public nuisance claim for these alleged actions of Defendant.

Finally, Plaintiffs allege public nuisance because Defendant allegedly removed a drainage pipe from his property and filled the remaining pipe with rocks and debris.[31] The City of Newark has "exclusive jurisdiction and control within the city of the drainage thereof";[32] thus, the City of Newark has sole authority over any action which Defendant may have taken regarding this drainage pipe.[33] Plaintiffs do not have standing to bring a public nuisance claim for these alleged actions of Defendant.

---

*Id.* (emphasis added).

[29] *Id.* § 14A-35.

[30] Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3 (floodplain violation notices).

[31] Am. Compl. ¶¶ 6(D), 9.

[32] NEWARK, DE CHARTER OF THE CITY § 410.

[33] *Id.* Specifically, the Charter states:
> The city also shall have the power and authority to regulate, maintain, cleanse, and operate such . . . storm drains . . . within the city open, clear and unobstructed, and for that purpose may authorize the entry upon private lands and taken [sic], condemn and occupy the same and by regulation prescribe the mode in which they shall be altered, changed, opened . . . kept open and unobstructed . . . .

*Id.*

Because Plaintiffs do not have standing to sue Defendant for his alleged violations of the Code, Defendant's Motion for Summary Judgment is GRANTED with regard to the public nuisance claim. The remaining allegations in Count I of the Complaint are more properly viewed as private nuisance claims.

### b. Private Nuisance

A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of their land.[34] There are two types of private nuisance recognized in Delaware: nuisance *per se* and nuisance-in-fact.[35] A claim for nuisance *per se* exists in three types of cases: 1) intentional, unreasonable interference with property rights of another; 2) interference resulting from an abnormally hazardous activity conducted on the person's property; and 3) interference in violation of a statute intended to protect public safety.[36] A claim for nuisance-in-fact exists when the defendant, although acting lawfully on his own property, permits acts or conditions that "become nuisances due to circumstances or

---

[34] *Jagger v. Schiavello*, 93 A.3d 656, 660 n.11 (Del. Super. 2014).

[35] *Quail Vill. Homeowner's Ass'n, Inc. v. Rossell*, 2018 WL 6534456, at *9 (Del. Ch. Dec. 10, 2018); *Beam v. Cloverland Farms Dairy, Inc.*, 2006 WL 2588991, at *2 (Del. Ch. Sept. 6, 2006).

[36] *Quail Vill. Homeowner's Ass'n*, 2018 WL 6534456, at *9; *Beam*, 2006 WL 2588991, at *2; *Hylton v. Shaffer's Mkt., Inc.*, 343 A.2d 627, 629 (Del. Super. 1975).

13

location or manner of operation or performance."[37] Plaintiffs allege claims under both nuisance *per se* and nuisance-in-fact.

Defendant's Motion for Summary Judgment on all of Plaintiff's claims of private nuisance is GRANTED. Summary judgment is proper on these claims because Plaintiffs have not provided sufficient evidence supporting their nuisance *per se* claim, have not submitted expert reports to show necessary elements of their claims, and have not submitted expert reports to prove that they suffered damages.

### i. Plaintiffs have not provided sufficient evidence to support their claim for nuisance *per se*.

First, Plaintiffs allege that they have a claim for nuisance *per se* because Defendant's "non-permitted 500 gallon underground propane storage tank" is an abnormally hazardous activity.[38] To determine if an activity is "abnormally dangerous" the Court weighs six factors: 1) existence of a high degree of risk of some harm to the person, land or chattels of others; 2) likelihood that the harm that results from it will be great; 3) inability to eliminate the risk by the exercise of reasonable care; 4) extent to which the activity is not a matter of common usage; 5) inappropriateness of the activity to the place where it is carried on; and 6) extent to

---

[37] *Quail Vill. Homeowner's Ass'n*, 2018 WL 6534456, at *9; *Beam*, 2006 WL 2588991, at *2.

[38] Pl.'s Resp. to Def.'s Mot. for Summ. J. 1 n.2; Am. Compl. ¶ 13.

which its value to the community is outweighed by its dangerous attributes.[39] Although the Court considers all six factors, the existence of a high degree of risk (Factor 1) and the inability to eliminate the risk by the exercise of reasonable care (Factor 3) are generally afforded greater weight.[40]

After evaluating the above factors and viewing the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have not provided sufficient facts to show Defendant's UST is an abnormally hazardous condition. Plaintiffs' allegations focus on the fact that Defendant does not have a permit for the UST. The fact that the UST *can* be permitted shows that the UST is a condition which can be made safe through the use of reasonable care. Additionally, Plaintiffs have failed to show how the UST presents a high degree of risk of harm to their person or property. Again, the fact that the UST can be permitted tends to show that the UST does not present a high degree of risk of harm to either, otherwise the City would not permit such activities at all. Finally, Plaintiffs have shown no evidence of any of the other factors that this Court considers in evaluating if the UST is an abnormally hazardous activity.

Additionally, Plaintiffs allege that Defendant's installation of the UST without a permit constitutes nuisance *per se* because it is a violation of a statute

---

[39] *Artesian Water Co.*, 1983 WL 17986, at *19 (quoting Restatement (Second) of Torts § 520 (Am. L. Inst. 1977)).
[40] *Id.*

15

intended to protect public safety,[41] namely Section 14A-25 of the Code.[42] Plaintiffs have provided no evidence showing how Defendant's installation of the UST violates this provision of the Code. Plaintiffs would need to provide an expert witness and an expert report in order to show that the Defendant violated this ordinance, which deals with anchoring of USTs.[43] Plaintiffs have neither identified an expert witness to speak on this matter nor submitted an expert report on the matter. The deadline for Plaintiffs to submit their expert reports has long since passed.[44] Therefore, Plaintiffs have not provided sufficient evidence to show how Defendant violated Section 14A-25 of the Code.

Plaintiffs argue that Defendant's allegedly unpermitted UST creates a claim for nuisance *per se* because it is both an abnormally dangerous activity and a violation of a safety statute. Plaintiffs have failed to provide sufficient evidence to support their nuisance *per se* claim under either theory.

---

[41] This is the third type of case that may fall under the doctrine of nuisance *per se*. *Quail Vill. Homeowner's Ass'n*, 2018 WL 6534456, at *9; *Beam*, 2006 WL 2588991, at *2.

[42] Pl.'s Resp. to Def.'s Mot. for Summ. J. 1 n.2.

[43] Whether or not a storage tank is anchored properly is not a matter within the common knowledge of a layperson. *Cf. Vohrer v. Kinnikin*, 2014 WL 1203270 (Del. Super. Feb. 26, 2014) (finding that although a stove was a common household item, the stove's electrical wiring and circuitry are not matters within the common knowledge of a layperson). Accordingly, expert testimony and an expert report are required to help the trier of fact understand the evidence. Del. R. Evid. 702(a).

[44] Stipulation and Order Thereon 1, Nov. 12, 2018.

16

### ii. Plaintiffs failed to submit expert witness reports to support *prima facie* elements of their claims.

Plaintiffs allege that Defendant's installation of an underground propane tank and a gas fireplace, both of which were allegedly done without a permit, constitutes an ultra-hazardous activity and thus, a continuing nuisance.[45] It is not abundantly clear how a propane tank and a gas fireplace existing somewhere on the same property constitutes an ultra-hazardous activity. Unlike a wet floor in a supermarket or a defective mop head,[46] the danger of these two items existing in proximity to one another is not a matter of common sense; thus, an expert is needed to explain the ultra-hazardous nature of this condition.[47] Plaintiffs have neither identified expert witnesses who will testify on this matter nor submitted an expert report on the matter. Therefore, Plaintiffs have failed to show sufficient evidence as to how the UST and the gas fireplace create an ultra-hazardous condition. Accordingly, Plaintiffs have failed to show a *prima facie* element of their claim.

Two of Plaintiffs' claims are properly construed as nuisance-in-fact claims: Defendant's alleged removal and clogging of the drainage pipe and Defendant's alleged altering of the grade of his property.[48] Plaintiffs have provided no evidence

---

[45] Am. Compl. ¶ 13.
[46] *Hazel v. Delaware Supermarkets, Inc.*, 953 A.2d 705, 710 (Del. 2008); *Vohrer v. Kinnikin*, 2014 WL 1203270, at *4 (Del. Super. Feb. 26, 2014).
[47] Del. R. Evid. 702(a).
[48] Am. Compl. ¶¶ 6(D)–(E), 9. The Court considers these claims to be nuisance-in-fact claims because Plaintiffs have identified no statute or ordinance which

17

of the existence of this drainage pipe, the manner in which Defendant clogged it, or how these actions affected Plaintiffs' property. Proving these facts would require expert testimony.[49] Additionally, Plaintiffs have failed to provide evidence showing how Defendant altered the grade of his property and how this alleged alteration affects Plaintiffs' property. Plaintiffs also needed an expert witness to testify to these facts because such facts are not matters of common knowledge.[50] Plaintiffs have neither identified expert witnesses who will testify on these matters nor submitted an expert report on these matters. Therefore, Plaintiffs have failed to show sufficient evidence to show how Defendant's actions proximately caused any of the damages that Plaintiffs claim. Accordingly, Plaintiffs have failed to show a *prima facie* element of their claim.

### iii. Plaintiffs failed to submit expert witness reports showing how they suffered damages from Defendant's actions.

In addition to all of the nuisance claims already discussed, Plaintiffs argue that Defendant's destruction of certain trees on their property and failure to respect

---

Defendant violated with these actions; thus, the Court will view these actions as "lawful activities" carried out on Defendant's own property. The Court takes this view solely for the specific circumstances of this case and offers no opinion on whether the activities are, in fact, lawful.

[49] Del. R. Evid. 702(a). These facts have not been shown in the record presented to the Court. Further, the manner in which these actions have harmed Plaintiffs' property—proximate cause—requires an expert to explain to the Court. *Cf. Vohrer*, 2014 WL 1203270, at *4 (finding an expert witness was required to explain to the jury how the stove's wiring could produce electric shocks).

[50] Del. R. Evid. 702(a). *Cf. Vohrer*, 2014 WL 1203270, at *4.

18

known boundary lines also constitute a continuing nuisance.[51] Plaintiffs have failed to offer sufficient evidence of how they suffered damages from any and all of these alleged actions of Defendant.

First, Plaintiffs allege they suffered a diminution in the value of their home, in a minimum amount of $50,000, as a result of the "nuisance created and maintained by [Defendant]."[52] Plaintiffs argue that they, as landowners, may give an opinion as to the value of real estate.[53] The case law Plaintiffs cite in support of this argument deals with condemnation proceedings.[54] The Court is not convinced that its precedents relating to condemnation proceedings should apply to the instant case. Usually, condemnation proceedings focus on the value of the property as a whole.[55] Where the condemnation proceedings are for a portion of the landowner's property only, the Court has found the landowner able to testify to the value of the property before the condemnation but not to the value of the property after the condemnation—absent a showing that the owner has knowledge about the change

---

[51] Am. Compl. ¶¶ 6(F)–(G), 9.
[52] *Id.* ¶ 11.
[53] Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 1.
[54] *Id.* (citing *Eastern Shore Nat. Gas Co. v. Glasgow Shopping Ctr. Corp.*, 2007 WL 3112476, at *2 (Del. Super. Oct. 3, 2007)).
[55] *See Eastern Shore Nat. Gas Co.*, 2007 WL 3112476, at *1 (condemning the entire shopping plaza); *State ex rel. Smith v. 0.15 Acres of Land*, 164 A.2d 591, 591 (Del. Super. 1960) (condemning the entire restaurant).

in property value.[56] Although Plaintiffs might know the fair market value of their property based on what they paid for it and based on a comparison of their property to other homes in the area, Plaintiffs do not know how each of Defendant's alleged actions changed the value of their property. To establish how each of Defendant's actions changed the value of Plaintiffs' property, Plaintiffs would need to identify and submit an expert report from an expert witness;[57] Plaintiffs have not done so.

Second, Plaintiffs allege that their homeowner's insurance costs will increase due to the change in the floodplain.[58] Specifically, Plaintiffs allege a "believed increase" in the cost of their homeowner's insurance.[59] Plaintiffs have provided no evidence demonstrating that their homeowner's insurance costs have increased or that such increase was proximately caused by Defendant's actions. Further, Plaintiffs should have identified and submitted an expert report from an expert

---

[56] *State ex rel. Sec'y of Dep't of Transp. v. Mulholland*, 1994 WL 68002, at *2 (Del. Super. Sept. 16, 1994).

[57] Del. R. Evid. 702(a). While landowners may testify to the value of their property based on their personal knowledge of the property, they may not testify about how each alleged action impacted their property's value without the support of an expert with specialized knowledge in these matters. *Cf. Eastern Shore Nat. Gas. Co.*, 2007 WL 3112476, at *2 ("[Landowner's] testimony must be based on her personal knowledge of the property, not statistics or equations normally utilized by a certified appraiser.").

[58] Am. Compl. ¶¶ 7, 11.

[59] *Id.* ¶ 11.

witness showing that Defendant's alleged actions caused an increase in the costs of Plaintiffs' homeowner's insurance;[60] Plaintiffs have not done so.

Finally, Plaintiffs allege that that they have suffered "extreme mental anguish" as a result of the nuisance allegedly created by Defendant.[61] Plaintiffs needed to show proof of the "extreme mental anguish" they allegedly suffered through a medical expert. Without expert testimony, the Court is not able to find that Plaintiffs suffered this type of harm or that Defendant's conduct caused such harm.[62] Plaintiffs have neither identified an expert witness to testify to this matter nor submitted an expert report regarding this matter.

Plaintiffs have failed to provide sufficient evidence to show that they suffered damages and that any of Defendant's alleged actions caused these alleged damages. Accordingly, Plaintiffs have failed to show a *prima facie* element of their nuisance claims. Summary judgment on Plaintiffs' nuisance claims is proper.[63]

---

[60] Del. R. Evid. 702(a). Insurance rates may increase for a variety of reasons. Without expert testimony establishing the causal link between Plaintiffs' alleged homeowner's insurance cost increases and Defendant's actions, this Court cannot find that causal link.

[61] Am. Compl. ¶ 12.

[62] Del. R. Evid. 702(a). Similar to bodily injuries suffered in auto accidents, the connection between Defendant's alleged actions and Plaintiffs' mental injuries must be proven by testimony of a competent medical expert. *Cf. Sluss v. Davis*, 2006 WL 2846387, at *2 (Del. Super. Oct. 4, 2006).

[63] *Reybold Group, Inc. v. Chemprobe Technologies, Inc.*, 721 A.2d 1267, 1270–1271 (Del. 1998).

## 2. *Count II: Destruction of Property*

In Count II of their Amended Complaint, Plaintiffs allege that Defendant's actions caused destruction of their property.[64] For the following reasons, Defendant's Motion for Summary Judgment is DENIED with regard to the damage to Plaintiffs' maple tree. However, Defendant's Motion for Summary Judgment is GRANTED with regard to the remaining allegations in Count II.

### a. *Damage to the Maple Tree*

Plaintiffs allege that Defendant damaged a maple tree near the property line by shaving the trees directly up from the property line.[65] On this Count, there are still genuine disputes as to material facts, including: the location of the trunk of the tree in relation to the property line; and how far from the property line on Defendant's side the tree was cut.

Plaintiffs have identified and submitted a report from an arborist, Russell Carlson, detailing the manner in which the maple tree was damaged by Defendant's alleged cutting back of the branches. The report shows the damage done to the maple tree and provides a value of the damages done to the tree.[66] In response, Defendant

---

[64] Am. Compl. ¶¶ 14–18.

[65] *Id.* ¶¶ 6(F), 17.

[66] Where trees are for personal enjoyment or have ascetic value to the owner, courts should use replacement costs as the measure of damages. *Blevins v. Metzgar*, 2017 WL 2493148, at *3 (Del. Super. June 8, 2017) (citing *J.S.F. Properties, LLC v. McCann*, 2009 WL 4301625, at *2 (Del. Dec. 1, 2009)).

22

argues that this Court's holding in *Keller v. Oliver*[67] grants a property owner the right to engage in "self-help" to the property line.[68] Defendant's reading of *Keller* is inaccurate. In *Keller*, the parties stipulated that defendant had a right to cut tree limbs at the boundary line between plaintiff's and defendant's properties.[69] The Court's statement that "the defendant had a right to cut these limbs at the property line" is merely a reference to the parties' stipulation, not an assertion of a rule of law.[70] Thus, it remains unclear in Delaware whether a defendant has a right to engage in "self-help" by cutting tree limbs that extend onto his property. The Court declines to make a determination on this issue in a motion for summary judgment. Therefore, Defendant has not shown, in the face of Mr. Carlson's report, that he is entitled to judgment as a matter of law. Accordingly, summary judgment on this allegation is not proper.

b. *All Remaining Allegations of Destruction*

Plaintiffs claim that they are entitled to treble damages pursuant to 25 *Del. C.* § 1401, Timber Trespass. The Court may award treble damages for Timber Trespass when the plaintiff establishes: 1) that a trespasser "fells or causes to be cut down or felled a tree or trees growing upon the land of another"; 2) that plaintiff's property

---

[67] *Keller v. Oliver*, 1982 WL 590738 (Del. Super. May 17, 1982).
[68] Def.'s Mot. for Summ. J. ¶ 8.
[69] *Keller*, 1982 WL 590738, at *1.
[70] *Id.*

23

was established and marked by permanent and visible markers or that the trespasser was on notice that the rights of the plaintiff were in jeopardy; and 3) that the trespass was willful.[71] In support of their argument that they do not have to prove that the maple tree was cut down entirely to recover under § 1401,[72] Plaintiffs cite *Vaughan v. Veasey*.[73] In *Vaughan*, this Court stated that the plaintiff could prove the "cutting *or damaging of* standing timber" and still recover under § 1401.[74] This Court decided *Vaughan* in 1956. Section 1401 was amended in 1978 to include specific language that the actor must "cut down" or "fell" the tree.[75] The additional language in § 1401 clarifies that treble damages are available only when a tree is cut down or "felled" completely. It is not disputed that Plaintiffs' maple tree still stands; thus, Plaintiffs cannot claim treble damages. Defendant's Motion for Summary Judgment is GRANTED with regard to Plaintiffs' § 1401 claim.

Additionally, Plaintiffs claim "Destruction of Property" based on the following alleged actions of Defendant: maintaining an unpermitted UST; removing and filling a drainage pipe; failing to respect known boundary lines; and continued

---

[71] 25 *Del. C.* § 1401(a)–(b).
[72] Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 5.
[73] *Vaughan v. Veasey*, 125 A.2d 251 (Del. Super. 1956).
[74] *Id.* at 254 (emphasis added).
[75] *Compare* 49 Del. Laws ch. 236, § 1 (1953) (Section 1401 in 1956), *with* 61 Del. Laws ch. 384, § 1 (1978) (Section 1401, amended to include specific result language) and 25 *Del. C.* § 1401 (2019) (current version of Section 1401).

24

clearing of the Buffer Zone of natural plants.[76] Plaintiffs have failed to show how these actions have destroyed their property. Plaintiffs have not causally connected the drainage pipe, failure to respect boundary lines, and clearing of the Buffer Zone to any damage on their property. Plaintiffs needed an expert to establish the causal connection between these actions and the damages Plaintiffs allege;[77] Plaintiffs have neither identified an expert nor submitted an expert report thereon. Additionally, in relation to Defendant's allegedly unpermitted UST, Plaintiffs state that such condition *"may* result in actual physical harm to Plaintiff and Plaintiff's property."[78] Plaintiffs do not allege actual harm to their property from this condition: only the *potential* of actual harm. Therefore, Plaintiffs have not pleaded sufficient facts to support their *prima facie* claim with regard to any of these alleged actions.

Plaintiffs allege damage to their property from Defendant's "bush hogging" and removal of trees from City property.[79] Plaintiffs allege that these trees provided privacy to Plaintiffs and protected their property from flooding. In addition to the standing issues Plaintiffs face with regard to actions on City property, Plaintiffs have failed to show how these actions caused damage to their property. Plaintiffs should have identified an expert witness and submitted an expert report to show how

---

[76] Am. Compl. ¶¶ 5(C), 6(D), 6(G)–(H), 15.
[77] Del. R. Evid. 702(a).
[78] Am. Compl. ¶ 6(C) (emphasis added).
[79] Am. Compl. ¶¶ 5(A), 15.

Defendant's alleged actions on City property caused the destruction of Plaintiffs' property.[80] Plaintiffs have failed to do so; thus, Plaintiffs have failed to show sufficient facts to support their *prima facie* claim.

Plaintiffs allege Defendant's relocation of certain felled trees caused a hindrance in drainage of Plaintiffs' property.[81] Plaintiffs should have identified an expert witness and submitted an expert report to show how Defendant's alleged actions prevent Plaintiffs' property from draining.[82] Plaintiffs have failed to do so; thus, Plaintiffs have failed to show sufficient facts to support their *prima facie* claim.

Plaintiffs allege Defendant altered the grade of his property and thereby prohibited the natural flow of water from Plaintiffs' property.[83] Plaintiffs should have identified an expert witness and submitted an expert report to show how Defendant's alleged actions affected the natural flow of water from Plaintiffs' property.[84] Plaintiffs have failed to do so; thus, Plaintiffs have failed to show sufficient facts to support their *prima facie* claim.

---

[80] Del. R. Evid. 702(a). The causal connection between these actions and the damage caused is not a matter of common sense.
[81] Am. Compl. ¶¶ 5(B), 15.
[82] Del. R. Evid. 702(a). The causal connection between these actions and the damage caused is not a matter of common sense.
[83] Am. Compl. ¶¶ 6(E), 15.
[84] Del. R. Evid. 702(a). The causal connection between these actions and the damage caused is not a matter of common sense.

Finally, Plaintiffs allege that Defendant's actions caused both physical damage to plaintiff's residence and a diminution in value to Plaintiffs' property.[85] Plaintiffs have provided no evidence of physical damage to their residence. Further, as discussed above, Plaintiffs needed an expert witness to explain how Defendant's actions have caused a diminution in value to Plaintiffs' property. Accordingly, Plaintiffs have failed to show sufficient evidence of a *prima facie* element of their claim.

Summary judgment is proper on these allegations of Destruction of Property. Defendant's Motion for Summary Judgment is GRANTED with regard to all of Plaintiffs' claims of destruction of property unrelated to the maple tree.

*3. Count III: Trespass*

Plaintiffs allege Defendant intentionally trespassed on their property. The elements of a claim for intentional trespass are: 1) plaintiff has lawful possession of the land; 2) defendant entered onto plaintiff's land without consent or privilege; and 3) plaintiff shows damages.[86] There is a dispute as to whether Defendant ever entered onto Plaintiffs' land. Plaintiffs allege that Defendant entered their land and caused damage thereon; Defendant denies he ever did so.[87] Accordingly, there remains a genuine dispute as to a material fact; summary judgment is not proper.

---

[85] Am. Compl. ¶ 18.
[86] *Williams v. Manning*, 2009 WL 960670, at *8 (Del. Super. Mar. 13, 2009).
[87] Am. Compl. ¶¶ 20–21; Def.'s Motion for Summ. J. ¶ 9.

Defendant's Motion for Summary Judgment on Plaintiffs' Trespass claim is DENIED.

### 4. Count IV: Slander

Plaintiffs withdrew their Slander claim at Oral Argument on June 19, 2019.[88] Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' Slander claim is GRANTED.

## B. Defendant's Motion in Limine

Defendant moves to limit Plaintiffs testimony on certain topics, arguing that Plaintiffs have failed to identify necessary expert witnesses and are not qualified to testify to certain matters. For the following reasons, Defendant's Motion in Limine to Limit Plaintiffs' Testimony is GRANTED IN PART.

Defendant argues that Plaintiffs needed to provide experts to testify about the following: diminution in property value, structural damage to the property, increased cost of homeowner's insurance, damage to City land, interrupted drainage of Plaintiff's property, placement of an UST, violations of the Code, and the extreme mental anguish Plaintiffs allegedly suffered.[89] Plaintiffs argue that they themselves are competent to testify to such matters. Defendant is correct. As mentioned above, Plaintiffs should have identified an expert and submitted an expert report about the

---

[88] Def.'s Mot. in Lim. to Limit Pl.'s Test. ¶ 1.
[89] *Id.* ¶¶ 2, 7.

28

existence of the aforementioned facts and the causal connection between those facts and the harm Plaintiffs allegedly suffered.[90] Contrary to Plaintiffs assertion, such matters are not matters of common sense and require expert testimony. Plaintiffs are not competent to testify to such matters and are prohibited from doing so.

Plaintiffs argue that Plaintiff Everett Jones, who is a general contractor, will testify about the alleged structural issues and Code violations.[91] Mr. Jones may not testify to either matter. First, Plaintiffs have failed to submit an expert report from Mr. Jones. If Mr. Jones is to offer expert testimony, it must be supported by an expert report. Second, Mr. Jones is not qualified to testify about violations of the Code because Plaintiffs have not identified him as an expert witness or shown his familiarity with the Code provisions. Therefore, Mr. Jones is prohibited from testifying in such a manner.

Plaintiffs may testify to their observations and perceptions regarding their claims of Destruction of Property—solely about the maple tree—and Trespass. The Plaintiffs may not testify to the matters that the Court has stated require expert testimony.

---

[90] Del. R. Evid. 702(a). Diminution in property values, structural damage to a property, extreme mental anguish, interrupted drainage of a property, and increased insurance costs are all matters falling within different areas of "specialized knowledge." The Court declines to make factual findings about these matters without the benefit of expert testimony to establish the connection between Defendant's actions and these damages.

[91] Pls.' Resp. to Def.'s Mot. in Lim. ¶ 7.

## Conclusion

Plaintiffs may proceed on their claim for Destruction of Property only in relation to the maple tree and with their claim for Trespass. Plaintiffs may testify to their personal observations regarding these claims but may not give expert testimony.

For the forgoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and Defendant's Motion in Limine to Limit Plaintiff's Testimony is **GRANTED IN PART**.

**IT IS SO ORDERED.**

_____
**Judge Calvin L. Scott, Jr.**